## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AQUION ENERGY, INC., [1] | ) | Case No. 17-10500 (KJC) |
| | ) | |
| Debtor. | ) | |

**DEBTOR'S MOTION TO EMPLOY AND RETAIN PROTIVITI, INC. TO PROVIDE A CHIEF RESTRUCTURING OFFICER AND ADDITIONAL RESTRUCTURING SUPPORT PERSONNEL FOR THE DEBTOR PURSUANT TO 11 U.S.C. §§ 363(B), 105(A) *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtor and debtor in possession (the "Debtor") files this motion (the "Motion") pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") for the entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Debtor to retain Protiviti, Inc. ("Protiviti"), pursuant to the terms and conditions of that certain letter agreement between Protiviti and the Debtor dated February 20, 2017 (the "Engagement Letter")[2], to (i) provide Suzanne Roski to serve as Chief Restructuring Officer (the "CRO"), and (ii) provide additional staff (the "Supporting Professionals" and, together with the CRO, the "Protiviti Professionals"); (b) providing that the employment of the CRO and the Supporting Professionals is effective *nunc pro tunc* to the Petition Date; and (c) granting certain related relief. A copy of the Engagement Letter is

---

[1] The Debtor in this chapter 11 case and the last four digits of the Debtor's U.S. tax identification number is Aquion Energy, Inc. (1370). The Debtor's headquarters is located at 32 39th Street, Pittsburgh, PA, 15201.

[2] This Motion governs the retention of Protiviti as referenced herein. In the event of any conflict between the Engagement Letter and this Motion, the terms of the Motion shall control. Additionally, any capitalized terms used in this Motion and not otherwise defined herein shall have the meanings given to them in the Engagement Letter.

attached hereto as **Exhibit B**.  In support of this Motion, the Debtor submits the declaration of

Suzanne Roski (the "Roski Declaration"), attached hereto as **Exhibit C**.

In further support of this Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the

"Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference from the United States District Court for the District of*

*Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28

U.S.C. § 157(b)(2), and the Debtor confirms its consent pursuant to Rule 9013-1(f) of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection

with this Motion to the extent that it is later determined that the Court, absent consent of the

parties, cannot enter final orders or judgments in connection herewith consistent with Article III

of the United States Constitution.

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief sough herein are sections 105(a) and

363(b) of the Bankruptcy Code.

## BACKGROUND

4.      On the date hereof (the "Petition Date"), the Debtor commenced a case by

filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is

continuing in possession of its properties and is managing its businesses, as a debtor in

possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      The Debtor manufactures saltwater batteries with a proprietary,

environmentally-friendly electrochemical design.  Based in Pittsburgh, the Debtor was founded

2

in 2008 and had its first commercial product launch in 2014. Designed for stationary energy storage in pristine environments, island locations, homes, and businesses, the Debtor's batteries have been Cradle to Cradle Certified™, an environmental sustainability certification that has never previously been given to a battery producer. The Debtor's battery technology has won multiple prestigious awards including *Popular Science Best of What's New Innovation of the Year* (2014), *MIT Technology Review 50 Smartest Companies* (2015), *Global Cleantech 100 North American Company of the Year* (2017), among others. The Debtor's batteries contain no heavy metals or toxic chemicals and are non-flammable and non-explosive. The Debtor's products include battery stacks, modules and monitoring systems. More than 55 global dealers and distributors sell the Debtor's products directly to end users and other customers that incorporate the batteries into third party systems and equipment such as inverters, controls, solar/wind generators, gensets, racking, and enclosures.

6.    The factual background regarding the Debtor, including its current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of Suzanne Roski, Chief Restructuring Officer, in Support of First Day Motions* (the "<u>First Day Declaration</u>") and fully incorporated herein by reference.[3]

## RELIEF REQUESTED

7.    By this Motion, the Debtor seeks, pursuant to Sections 105 and 363 of the Bankruptcy Code, entry of an order: (a) authorizing the Debtor to retain Protiviti to (i) provide Suzanne Roski to serve as CRO and (ii) provide Supporting Professionals to support the CRO and perform restructuring advisory services; (b) providing that the employment of the CRO and

---

[3]    Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the First Day Declaration.

the Supporting Professionals is effective *nunc pro tunc* to the Petition Date; and (c) granting

certain related relief.

## PROTIVITI'S QUALIFICATIONS

8.     Based on the complexities associated with administering this chapter 11

case and the estate, the Debtor has determined that it requires the assistance of restructuring

advisors with specialized experience in bankruptcy and restructuring advisory services.

Accordingly, the Debtor desires to employ Protiviti.  The Debtor has determined that the

retention of Protiviti is necessary and appropriate, and is in the best interests of the Debtor's

estates, due to Protiviti's extensive expertise and qualifications in performing the analyses

required in this particular bankruptcy case and for the reasons enumerated herein.

9.     Protiviti is a global consulting firm which serves clients through the

network of Protiviti and independently owned Member Firms in more than 70 offices in over 20

countries.  Protiviti has significant qualifications and experience in providing the services

contemplated herein and is well suited to assist the Debtor in the matters for which the Debtor

proposes to retain it.  Protiviti serves troubled companies, debtors, secured and unsecured

creditors, equity holders, and other parties and has extensive experience providing consulting

services in reorganization proceedings and complex financial restructurings.  For instance,

Protiviti and its professionals are providing or have provided bankruptcy services in connection

with the restructuring of many chapter 11 debtors.  *See, e.g. In re Metromedia Steakhouses

Company, L.P.*, Case No. 08-12490 (MFW) (Bankr. D. Del. October 22, 2008); *In re Uni-

Marts, LLC*, Case No. 08-11037 (MFW) (Bankr. D. Del. May 29, 2008); *In re Linens Holding

Co.*, Case No. 08-10832 (CSS) (Bankr. D. Del. May 2, 2008); *In re Black Crow Media Group,

LLC*, Case No. 08-12490 (Bankr. M.D. Fla. January 12, 2010); *In re Roper Brothers Lumber*

4

*Company, Incorporated* Case No. 09-38215 (Bankr E.D. Va. December 17, 2009); *In re Greenbrier Hotel Corporation* Case No. 09-31703 (Bankr. E.D. Va. March 19, 2009); *In re Thornburg Mortgage, Inc.* Case No. 09-17787 (Bankr, D. Md. May 1, 2009); *In re Ennstone, Inc.* Case No. 09-31204 (Bankr. E.D. Va. February 24, 2009); *In re OTC Holdings Corporation* Case No. 10-12636 (Bankr. D. Del. August 25, 2010); *In Free Lance-Star Publishing Co. of Fredericksburg, VA Inc.* Case No. 14-30315 (Bankr. E.D. Va January 23, 2014), and *In re LandAmerica Financial Group, Inc.* Case No. 08-35994 (Bankr. E.D. Va. November 26, 2008).

10.    Ms. Roski has considerable experience working with senior management teams in the areas of financial and operational restructuring, loan workouts, and business planning.  Ms. Roski joined Protiviti in 1999 and has over thirty years of professional experience.  She has held positions in professional services consulting, public and private companies, and public accounting.

11.    The Debtor is informed and believes that the Protiviti Professionals have on many occasions performed similar services to the ones required in this case for numerous debtors, trustees, examiners and creditors' committees in other non-related cases under receivership, bankruptcy and other insolvency proceedings in the State of Delaware and elsewhere. Protiviti's professionals have experience working on cases with similar fact scenarios in which they were presented with issues and performed analyses similar to the work at hand in this case.

12.    As set forth above, Suzanne Roski and Protiviti have extensive experience in providing restructuring advisory and restructuring management services in reorganization proceedings and have an excellent reputation for the services they have rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.  The compensation

5

arrangement reflected in the attached Engagement Letter is consistent with, and typical of, arrangements entered into by Protiviti and other restructuring and consulting firms with respect to rendering similar services for clients such as the Debtor.

## SCOPE OF SERVICES

13.    Protiviti has agreed that Ms. Roski will serve as the Debtor's CRO and will assist the Debtor in evaluating and implementing strategic options. In addition, Protiviti has agreed to provide the Supporting Professionals to assist the CRO and perform restructuring advisory services for the Debtor. The Protiviti Professionals' rates, and other related information, are set forth in the Engagement Letter and summarized herein.

14.    The Debtor has delineated the following terms regarding the CRO's and the Supporting Professionals' employment and scope of services:

a.  CRO:

    i. Assist the Company with cash flow budgeting, including analyzing actual cash receipts and disbursements and developing projections;

    ii. Interact and negotiate with lenders and creditors as needed to facilitate the process;

    iii. Assist the Company with marketing, financial analysis and modeling and negotiations of bids with a stalking horse or other interested parties to support the closing of a sale transaction;

    iv. Provide oversight and management of the Company's remaining employees and consultants;

    v. Assist counsel and provide support and testimony, if needed, for any motions or proceedings that arise during the pendency of the case; and

      vi.  Assist the Company with other ad hoc services, as required or requested.

  b.  Supporting Professionals:

      i.  Ensure the Company's compliance with Chapter 11 administrative and reporting requirements according to the Delaware local rules;

      ii.  Assist the Company with preparing diligence and other information to facilitate the ongoing sales and auction processes; and

      iii.  Assist the CRO with other ad hoc services, as required or requested.

15.     Subject to approval of this Court, the Debtor seeks to engage Protiviti. Ms. Roski is the senior professional staffed by Protiviti on the engagement. Additional Protiviti staff will be made available during this chapter 11 case pursuant to the terms of the Engagement Letter.

16.     Suzanne Roski and Protiviti are well-qualified and able to provide restructuring management and advisory services to the Debtor in a cost-effective, efficient, and timely manner. Protiviti shall report directly to the Debtor's board and shall attend meetings of the board, as requested from time to time. Further, Protiviti shall provide the board with regular updates regarding the Debtor's restructuring process.

17.     The Debtor requires Suzanne Roski's and Protiviti's professional services and expertise in order to assist the Debtor in the administration of this case and its efforts to maximize the value of their estates. Protiviti will coordinate with the Debtor's other retained professionals to avoid the unnecessary duplication of services.

18.     Because Protiviti is not being employed as a professional under section 327 of the Bankruptcy Code, the Debtor requests, on behalf of Protiviti, that Protiviti not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.

However, to maintain transparency and to comply with the U.S. Trustee's protocol applicable to the retention of personnel under section 363 of the Bankruptcy Code, Protiviti will file reports of compensation earned and expenses incurred and paid on a quarterly basis with the Court (the "Quarterly Reports") and provide notice to (i) the U.S. Trustee and (ii) counsel to any committees appointed in this chapter 11 case (collectively, the "Notice Parties"). The Quarterly Reports will (a) summarize the services provided to the Debtor, (b) identify the Supporting Professionals provided, (c) summarize the compensation earned by each of the Supporting Professionals, and (d) itemize the expenses incurred. Notice for the Quarterly Reports will provide a time period to file responses or objections of fourteen (14) days for the Notice Parties. All compensation will be subject to review by the Court in the event an objection or response is filed. For the avoidance of doubt, the Debtor submits that Ms. Roski and the Protiviti Professionals are not, and shall not, be required to comply with Local Rule 2016-2.

19.     The Debtor proposes that the Quarterly Reports shall be due no later than twenty (20) days after the end of a quarter with the first Quarterly Report covering the period from the Petition Date through June 30, 2017, due on or before July 20, 2017. This timing shall continue for any subsequent Quarterly Reports.

20.     In addition, Protiviti will file with the Court and provide the Notice Parties a report on staffing (a "Staffing Report") containing (a) the names and functions filled by all Protiviti personnel assigned to the Debtor's case and (b) the number of hours worked by each. The Staffing Reports shall be due no later than the 20th of each month for the previous month, with the first report covering the month of March, and due on April 20, 2017. Notice for the Staffing Reports will provide a time period to file responses or objections of fourteen (14) days

for the Notice Parties.  The Staffing Reports would be subject to review by the Court in the event

an objection is filed.

## PROTIVITI'S CONNECTIONS WITH THE DEBTOR
## AND THE PARTIES IN INTEREST

21.     The Debtor does not believe that Protiviti is a "professional" whose

retention is subject to approval under section 327 of the Bankruptcy Code.  However, Protiviti

has or will provide information with respect to its connections with the Debtor, its creditors, or

its related parties, as more specifically described herein and in the Roski Declaration.

22.     To the best of the Debtor's knowledge, information and belief, neither

Protiviti nor any professional employee or independent contractor of Protiviti has any connection

with or any interest adverse to the Debtor, its significant creditors, or any other significant party

in interest known to Protiviti, or their respective attorneys and accountants, except as may be set

forth in the Roski Declaration.

23.     As set forth in further detail in the Roski Declaration, the Debtor does not

owe Protiviti or any of its affiliates any amount for services performed or expenses incurred prior

to the commencement of this chapter 11 case, and, thus, Protiviti and its affiliates are not

prepetition creditors of the Debtor.  The Roski Declaration contains a history of payments

received by Protiviti and its affiliates in the ninety (90) days prior to the Petition Date.

24.     The Debtor attaches the Roski Declaration, which discloses, among other

things, any relationship that Protiviti, Suzanne Roski, or any of Protiviti's employees engaged on

this matter have with the Debtor, its significant creditors, or other significant parties in interest

known to Protiviti.  In addition, as set forth in the Roski Declaration, if any new material facts or

relationships are discovered or arise, Protiviti will provide the Court with a supplemental

declaration.

25.     As stated above and in the Roski Declaration, the Debtor does not believe that Protiviti holds or represents any interest adverse to the Debtor's estate. Accordingly, the Debtor submits that the retention of Protiviti is in the best interests of the Debtor, its estate, and its creditors, and should be approved by the Court.

## RETENTION TERMS

### A.     Professional Compensation

26.     Protiviti's decision to advise and assist the Debtor in connection with this chapter 11 case is conditioned upon its ability to be retained in accordance with Protiviti's customary terms and conditions of employment.

27.     Protiviti will charge the Debtor a flat fee of $60,000 per month through May 31, 2017, for the services Suzanne Roski provides as the Debtor's CRO. This monthly fixed fee excludes Ms. Roski's out-of-pocket expenses. Given the anticipated time commitment required of Ms. Roski in her capacity as CRO, the Debtor believes the value of the fixed fee arrangement to exceed compensating Ms. Roski on an hourly basis. Beginning June 1, 2017, Ms. Roski's services will be billed on an hourly basis at a 10% discounted rate, as set forth in table below.

28.     The fees for Protiviti Supporting Professionals will be based on the actual hours charged at the hourly rates set forth in the table below. Hourly rates may change in the future from time to time and are typically adjusted annually. Protiviti will inform the Debtor of any changes in hourly rates verbally or in writing prior to such new hourly rates going into effect. Such rates and ranges shall be subject to adjustment as to reflect advancing experience, capabilities, and seniority of professionals as well as general economic factors.

10

| | Standard Rate | | | | Aquion Rate | | |
|---|---|---|---|---|---|---|---|
| Managing Director (Beginning 6/1/17) | | $ | 690 | | | - $ | 621 |
| Directors & Associate Directors | $ 500 | - | 530 | $ 450 | - | | 477 |
| Senior Managers & Managers | 350 | - | 410 | 315 | - | | 369 |
| Senior Consultants & Consultants | 210 | - | 250 | 189 | - | | 225 |

29.     In addition to compensation for professional services rendered by personnel, Protiviti also will be entitled to reimbursement for its reasonable costs and expenses. Such costs and expenses may include, among others, charges for messenger services, photocopying, travel expenses (coach air travel), long distance telephone charges, postage and other charges customarily invoiced by consulting firms.

30.     On or about February 27, 2017, Protiviti received a retainer from the Debtor in the amount of $150,000.   On March 7, 2017, Aquion restored the Protiviti retainer to its original balance with a payment of $108,000.  Upon the termination of Protiviti's engagement, Protiviti will return any unused portion of this retainer to the Debtor.

**B.**     **Limitation of Liability, Indemnity**

31.     The Engagement Letter contains standard indemnification and limitation of liability language with respect to Protiviti's services.  Notwithstanding any provisions of the Engagement Letter to the contrary, in accordance with the U.S. Trustee's protocol applicable to the retention of personnel to assist the Debtor under section 363 of the Bankruptcy Code (sometimes referred to as the "Jay Alix Protocol"), Protiviti has agreed otherwise, as set forth below.

a.   Notwithstanding anything to the contrary in the Engagement Letter, the Debtor is permitted to indemnify those persons acting as executive officers only on the same terms as provided to the Debtor's other officers and directors under the

11

corporate bylaws and applicable state law, in addition to insurance coverage under

the Debtor's director and officer insurance policies.

b.  There will be no indemnification of Protiviti or any of its affiliates.

c.  Finally, notwithstanding any provisions of the Engagement Letter to the contrary,

Protiviti has agreed not to raise or assert any defense based upon jurisdiction,

venue, abstention, or otherwise to the jurisdiction and venue of this Court or (if

the reference is withdrawn) the District Court for the District of Delaware to hear

or determine any controversy or claims with respect to, in connection with, arising

out of, or in any way related to Protiviti's engagement on this case.

## BASIS FOR RELIEF

32.    The Debtor submits that the retention of the CRO and the Supporting

Professionals is proper under section 363 of the Bankruptcy Code.  Section 363(b) of the

Bankruptcy Code provides that, after notice and a hearing, a debtor may use property of the

estate other than in the ordinary course of business. "In determining whether to authorize the use,

sale or lease of property of the estate under this section, courts require the debtor to show that a

sound- business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242

B.R. 147, 153 (Bankr. D. Del. 1999); *see also In re Delaware & Hudson Ry. Co.*, 124 B.R. 169,

176 (D. Del. 1991).

33.    The retention of corporate officers is proper under section 363 of the

Bankruptcy Code, and courts in this district and elsewhere have determined that such retention is

an appropriate exercise of a debtor's business judgment. *See, e.g.*, *In re American Apparel LLC*,

Case No. 16-12551 (BLS) (Bankr. D. Del. Dec. 8, 2016) (authorizing debtors' retention of a

chief restructuring officer and additional support personnel); *In re Endeavor Operating Corp.*,

12

Case No. 14-12308 (KJC) (Bankr. D. Del. Nov. 6, 2014) (authorizing debtors' retention of chief restructuring officer); *In re Devonshire PGA Holdings, LLC*, Case No. 13-12460 (CSS) (Bankr. D. Del. Oct. 16, 2013) (same); *In re Harry & David Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Apr. 27, 2011) (authorizing retention of Alvarez & Marsal to provide an interim chief executive officer and chief restructuring officer and certain additional officers and personnel); and *In re Archbrook Laguna Holdings LLC*, Case No. 11-13292 (SCC) (Bankr. S.D.N.Y. Aug. 3, 2011) (authorizing retention of chief restructuring officer pursuant to sections 363(b) and 105(a) of the Bankruptcy Code).

34.    Additionally, the Court's general equitable powers codified in section 105(a) of the Bankruptcy Code provide ample authority for the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." *See* 11 U.S.C. § 105(a); *see also United States v. Energy Resources Co.*, 495 U.S. 545, 549 (1990); *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code."); *Adelphia Commc'ns Corp. v. The American Channel* (In re Adelphia Commc'ns Corp.), 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006) ("Section 105(a) provides broad equitable power for a Bankruptcy Court to maintain its own jurisdiction and to facilitate the reorganization process.").

35.    The Debtor has engaged Protiviti to complete crucial, time-sensitive, and work-intensive projects. Protiviti is providing services currently, and the continued assistance of Protiviti is crucial to the success of this case. For example, Protiviti will assist the Debtor in developing and implementing short-term cash flow forecasting to maximize the value of the

Debtor.  Protiviti will work with senior management as well as other employees to ensure that

the Debtor complies with the operational requirements imposed as a result of the filing of this

chapter 11 case.  In addition, Protiviti will assist other professionals sought to be retained by the

Debtor in this chapter 11 case by acting as a medium through which each professional can obtain

information about the Debtor.  Protiviti's role as a conduit to information enables the other

professionals in this case to provide better service to the Debtor, thereby maximizing the

Debtor's going concern value while simultaneously allowing the Debtor's senior management, as

well as other employees, to concentrate on maintaining business operations and preparing

Aquion's assets for sale.  To provide such services in an effective manner, it will be necessary

for Protiviti to take the action immediately on the Petition Date.

### REQUEST FOR WAIVER OF BANKRUPTCY RULE 6004(h)

36.     The Debtor respectfully requests a waiver of the fourteen (14) day stay of

effectiveness imposed by Bankruptcy Rule 6004(h) so that the relief requested herein can take

effect immediately upon entry of an order approving this Motion.

### NOTICE

37.     The Debtor will provide notice of this Motion to the following parties, or

their counsel, if known:  (a) the Office of the United States Trustee; (b) the Debtor's largest 20

creditors (c) the Debtor's prepetition lenders; (d) any party that has requested notice pursuant to

Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtor respectfully

submits that no further notice of this Motion is required.

### NO PRIOR REQUEST

38.     No prior request for the relief sought in the Motion has been made to this

Court or any other Court.

14

DOCS_DE:212562.6 05436/001

WHEREFORE, the Debtor respectfully request the Court enter an Order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Debtor to retain Protiviti to (i) provide Suzanne Roski to serve as CRO and (ii) provide Supporting Professionals to support the CRO and perform restructuring advisory services; (b) providing that the employment of the Protiviti Professionals is effective *nunc pro tunc* to the Petition Date; and (c) granting such other and further relief as is just and proper.

Dated: March ___, 2017

Aquion Energy, Inc.

By: _____
Name: Tom Madden
Title: Chief Technology Officer and Secretary