**Exhibit A**

**Bid Procedures Order**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AQUION ENERGY, INC.,[1] | ) | Case No. 17-10500 (KJC) |
| | ) | |
| Debtor. | ) | **Docket Ref. No. _____** |

**ORDER (A) AUTHORIZING ENTRY INTO THE
ASSET PURCHASE AGREEMENT WITH RESPECT TO THE SALE
OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; (B) APPROVING
BID PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS
OF DEBTOR; (C) SCHEDULING AN AUCTION AND HEARING TO CONSIDER
THE SALE AND APPROVE THE FORM AND MANNER OF NOTICE RELATED
THERETO; (D) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION
AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES, INCLUDING
NOTICE OF PROPOSED CURE AMOUNTS; (E) APPROVING CERTAIN
<u>BREAKUP FEE PROVISIONS; AND (F) GRANTING OTHER RELATED RELIEF</u>**

Upon the motion (the "<u>Motion</u>") of the above-captioned debtor and debtor-in-

possession (the "<u>Debtor</u>") for, in part, entry of an order (a) approving the Debtor's entry into that

certain Asset Purchase Agreement dated as of May 23, 2017, (attached as <u>Exhibit B</u> to the

Motion, the "<u>Purchase Agreement</u>"), by and among the Debtor and Bluesky Energy US, Inc. (the

"<u>Stalking Horse Purchaser</u>") (the "<u>Stalking Horse Purchaser</u>"); (b) approving certain bid

procedures for the sale of substantially all of the Debtor's assets; (c) scheduling an auction and

hearing to consider the sale and approve the form and manner of notice related thereto; (d)

establishing procedures relating to the assumption and assignment of certain contracts, including

notice of proposed cure amounts; (e) approving breakup fee; and (f) granting other related relief,[2]

---

[1] The Debtor in this chapter 11 case and the last four digits of the Debtor's U.S. tax identification number is Aquion Energy, Inc. (1370). The Debtor's headquarters is located at 32 39th Street, Pittsburgh, PA, 15201.

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.

and it appearing that the Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(a); the Court

having considered the Motion; and it appearing that the relief requested in the Motion, is in the

best interests of the Debtor's bankruptcy estate, its creditors and other parties-in-interest; and after

due deliberation and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:

A.     This Court has jurisdiction over this Motion and the transactions

contemplated therein pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant

to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409.

B.     Notice of the Motion was adequate and sufficient under the circumstances

of this chapter 11 case, and such notice complied with all applicable requirements of title 11 of

the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and the Local Bankruptcy Rules.

C.     All objections to the relief requested in the Motion that have not been

withdrawn, waived or settled as announced to the Court at the hearing on the Motion or by

stipulation filed with the Court, are overruled except as otherwise set forth herein.  A reasonable

opportunity to object or otherwise be heard was afforded to all parties in interest entitled to notice.

D.     The bid procedures attached hereto as **Exhibit 1** (the "Bid Procedures") are

reasonable and appropriate under the circumstances of this chapter 11 case.  The Debtor has

articulated good and sufficient reasons for the Court to grant the relief requested in the Motion

2

regarding the Bid Procedures. The Bid Procedures were negotiated in good faith and at arms' length by the Debtor and the Stalking Horse Purchaser, and they represent a fair and appropriate method for maximizing the realizable value of substantially all of the Debtor's assets. Therefore, the Debtor is authorized to take any and all actions necessary or appropriate to implement the Bid Procedures. The Debtor is authorized to take any and all actions necessary or appropriate to implement the Bid Procedures.

E.      Entry into the Purchase Agreement is in the best interest of the Debtor and the Debtor's estate and creditors. The Purchase Agreement enabled the Debtor to secure an adequate floor for the Auction and will provide a clear benefit to the Debtor's estate.

F.      The Stalking Horse Purchaser has expended, and likely will continue to expend, considerable time, money and energy pursuing the proposed sale of the Assets and has engaged in extended arms' length good faith negotiations with the Debtor. The Breakup Fee, and other bidding protections, as set forth in the Bid Procedures, in favor of the Stalking Horse Purchaser are (i) an actual and necessary cost and expense of preserving the Debtor's estate within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code, (ii) commensurate to the real and substantial benefit conferred upon the Debtor's estate by the Stalking Horse Purchaser, (iii) have been negotiated by the parties and their respective advisors at arms' length; and (iv) are reasonable and appropriate, in light of the size and nature of the contemplated sale transaction and comparable transactions, the commitments that have been made and the efforts that have been and will be expended by the Stalking Horse Purchaser. The Breakup Fee is a material inducement for, and conditions of, the Stalking Horse Purchaser's entry into its stalking

3

horse bid. The Stalking Horse Purchaser is unwilling to commit to purchase the Assets under the terms of the Purchase Agreement unless the Stalking Horse Purchaser is assured the protection provided by the Breakup Fee. The payment of such amounts to the Stalking Horse Purchaser is fair and reasonable in view of the fact that, if the Breakup Fee is triggered, then the Stalking Horse Purchaser's efforts will have increased the prospects that the Debtor will receive the highest or otherwise best offer for the Assets.

G.    The form of the Purchase Agreement is fair and reasonable and provides flexibility in the process to sell the Assets in a manner designed to maximize the value of the Assets. The Debtor has demonstrated a sound business justification for authorizing the payment of the Breakup Fee to the Stalking Horse Purchaser in the amounts and under the circumstances set forth in the Purchase Agreement.

H.    The Notice of Bid Procedures, Auction date and Sale Hearing, substantially in the form attached hereto as **Exhibit 2** (the "Sale and Bid Procedures Notice"), the Notice of Auction and Sale Hearing, substantially in the form attached hereto as **Exhibit 3** (the "Creditor Notice"), and the notice substantially in the form attached hereto as **Exhibit 4** to be served on counterparties to the Assumed Executory Contracts ("Cure Notice") each is calculated to provide adequate notice concerning the proposed sale of the Assets and the proposed assumption and assignment of the Assumed Executory Contracts that are the property of the Debtor, and is intended to provide due and adequate notice of the relief that will be sought by the Motion.

I.    The procedures for the assumption and assignment of the Assumed Executory Contracts provided for herein and the Cure Notice are reasonable and appropriate and

4

consistent with the provisions of Section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.
The procedures for the assumption and assignment of the Assumed Executory Contracts have
been narrowly tailored to provide an adequate opportunity for all non-debtor counterparties to the
Assumed Executory Contracts to assert any objection.

      J.     The entry of this Order is in the best interests of the Debtor, its estate,
creditors and other parties in interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

    1.     The relief requested in the Motion is granted as set forth in this Bid
Procedures Order.

    2.     The Bid Procedures attached hereto as **Exhibit 1** are approved in their
entirety, and are incorporated into this Bid Procedures Order and shall apply to the proposed sale
of the Assets.  The Debtor is authorized to take any and all actions necessary or appropriate to
implement the Bid Procedures, provided such action is not inconsistent with the Stalking Horse
Purchase Agreement.

    3.     The proposed sale of the Assets, the proposed assumption and assignment
of the Assumed Executory Contracts, and the Auction shall be conducted in accordance with the
provisions of this Bid Procedures Order and the Bid Procedures.

    4.     The Breakup Fee as set forth in the Bid Procedures are hereby approved.
The Debtor is authorized without further Court action to pay any Breakup Fee solely to the extent
such amounts become due and payable to the Stalking Horse Purchaser, pursuant to the Purchase
Agreement and this Bid Procedures Order.

5

5.    The Sale and Bid Procedures Notice attached hereto as **Exhibit 2**, the Creditor Notice attached hereto as **Exhibit 3**, and the Cure Notice attached hereto as **Exhibit 4** provide proper notice to all parties in interest and are approved.

6.    Within two (2) business days following entry of this Order, the Debtor shall serve by first class mail the Sale and Bid Procedures Notice on the following parties:  (a) the U.S. Trustee; (b) the Committee; (c) all parties known to assert a lien, encumbrance or claim on any of the Assets; (d) all known counterparties to the Debtor's unexpired leases and executory contracts; (e) all entities known to have expressed an interest in bidding on the Assets; (f) the United States Attorney's office; (g) all state attorney generals in states in which the Debtor's assets are located; (h) state taxing authorities in the states in which the Debtor's assets are located and the Internal Revenue Service; (i) environmental authorities and other regulatory authorities in the states or applicable jurisdictions in which the Debtor's assets are located; (j); the Stalking Horse Purchaser and its counsel; and (k) all other parties that had filed a notice of appearance and demand for service of papers in these bankruptcy cases under Bankruptcy Rule 9010(b) as of the date of entry of this Bid Procedures Order.

7.    Within two (2) business days following entry of this Order, the Debtor shall serve the Creditor Notice on all known creditors of the Debtor.  Except as set forth in this and the foregoing paragraph of this Order, no other or further notice of the sale shall be required to be provided by the Debtor.

8.    Within two (2) business days following the entry of this Order, the Debtor shall file and serve the Cure Notice to the counterparties to the Assumed Executory Contracts.

6

Counterparties to the Assumed Executory Contracts[3] (each a "Counterparty," and together, the "Counterparties") must file and serve on the applicable notice parties any objection to the assumption and assignment of any Assumed Executory Contract, including objections to any Cure Amount, by _____, 2017, at _____ **p.m. (Eastern Time)**.

9.      Any Counterparty failing to timely file an objection to the Cure Amount set forth in the Cure Notice shall be deemed to consent to the assumption and assignment of the Assumed Executory Contract and forever barred from objecting to the Cure Amounts and from asserting any additional cure or other amounts against the Debtor, its estate, and the Successful Bidder with respect to the Assumed Executory Contracts to which it is a Counterparty. Notwithstanding anything to the contrary, no executory contract or unexpired lease will be assumed unless and until the occurrence of the closing of the Sale to the Successful Bidder.

10.      Any other objection to any of the relief to be requested at the Sale Hearing must be in writing, state the basis of such objections with specificity and shall be filed with the Court (with a courtesy copy to Chambers) on or before _____, **2017, at** _____ **p.m. (Eastern Time)** (the "Objection Deadline"), and such objection must be served and otherwise undertaken in accordance with the Sale and Bid Procedures Notice so as to be received by such date and time by:  (i) counsel to the Debtor and Debtor-in-Possession, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE  19899-8705 (Courier 19801), Attn:  Laura Davis Jones, Esq.; (ii) counsel to the Official Committee of

---

[3] The inclusion of any agreement as an Assumed Executory Contract does not constitute an admission by the Debtor that such agreement actually constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code, and the Debtor expressly reserve the right to challenge the status of any agreement included as an Assumed Executory Contract.

7

Unsecured Creditors: (a) Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, New York 10020, Attn: Jeffrey Cohen, Esq. and Barry Z. Bazian, Esq.; (b) Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ 07068, Attn: Andrew David Behlmann, Esq.; (c) Klehr Harrison Harvey Branzburg LLP, 919 Market Street, Suite 1000, Wilmington, Delaware 19801, Attn: Richard M. Beck, Esq. and Sally E. Veghte, Esq.; (iii) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 N. King Street, Suite 2207, Lock Box 35, Wilmington, DE 19801, Attn: Hannah McCollum, Esq.; and (iv) counsel to any Stalking Horse Purchaser. The failure of any objecting person or entity to file its objections by the Objection Deadline and in accordance with the Sale and Bid Procedures Notice will be a bar to the assertion, at the Sale Hearing or thereafter, of any objection (including the sale of Assets and assumption and assignment of Assumed Executory Contracts free and clear of all liens, claims and encumbrances).

11.     Compliance with the foregoing notice provisions shall constitute sufficient notice of the Debtor's proposed Sale of the Assets free and clear of all liens, claims, interests and encumbrances, the contemplated assumption and assignment of each Assumed Executory Contract and the proposed amount of Cure Amounts with respect to each such Assumed Executory Contract, and no additional notice of such contemplated transactions need be given.

12.     The Bid Deadline shall be _____, 2017, at _____ p.m. **(Eastern Time)**.

13.     The Debtor, after consultation with the Committee, shall have the exclusive right to determine whether a bid is a Qualified Bid and shall notify Qualified Bidders whether

their bids have been recognized as such as promptly as practicable after a Qualified Bidder delivers all of the materials required by the Bid Procedures. Debtor shall provide the Qualified Bids to counsel for the Stalking Horse Purchaser in the manner provided in the Purchase Agreement.

14.    If the Debtor receive more than one Qualified Bid (as defined in the Bid Procedures), an auction (the "Auction") will be held on _____, **2017, at** _____ **p.m. (Eastern Time)**, at the offices of Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801, or at any such other location as the Debtor may hereafter designate. The Stalking Horse Purchaser is deemed a Qualified Bidder for purposes of participating in the Auction, should it wish to do so.

15.    Counsel to the Debtor is authorized to hold and conduct the Auction in accordance with the Bid Procedures. At such Auction, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale, and the Auction shall be conducted openly and transcribed. Within twenty-four (24) hours following the conclusion of the Auction, the Debtor shall file a notice identifying the Successful Bidder with the Court and shall serve such notice by fax, email, or if neither is available, by overnight mail to all counterparties whose contracts are to be assumed and assigned.

16.    The Sale Hearing shall be conducted on _____, **2017, at** _____ **p.m. (Eastern Time)**, and may be adjourned from time to time without further notice other than an announcement in open court at the Sale Hearing.

9

17.     Notwithstanding anything herein or in the Bid Procedures to the contrary, no sale free and clear of liens, claims and encumbrances shall be approved unless it complies with section 363(f) of the Bankruptcy Code.

18.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) and 7062 or otherwise, the terms and conditions of this Bid Procedures Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Bid Procedures Order.

19.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Bid Procedures Order.

Dated: _____, 2017

_____
Honorable Kevin J. Carey
United States Bankruptcy Judge

10

**Exhibit 1**

**Bid Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AQUION ENERGY, INC.,[1] | ) | Case No. 17-10500 (KJC) |
| | ) | |
| Debtor. | ) | |

## BID PROCEDURES FOR SALE OF
## SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

The above-captioned debtor and debtor in possession (the "Debtor") filed a motion dated May___, 2017 (the "Motion"),[2] seeking, among other things, approval of the process and procedures set forth below (the "Bid Procedures") through which they will determine the highest and best offer for the sale of substantially all of the business assets of the Debtor (the "Assets"). On May___, 2017, the Bankruptcy Court entered its order (the "Bid Procedures Order"), which, among other things, approved the Bid Procedures. Pursuant to the Bid Procedures Order, Bluesky Energy US, Inc. (the "Stalking Horse Purchaser") is the Stalking Horse Purchaser for the assets, subject to higher and better bids that may be submitted in accordance with these Bid Procedures.

On _____, 2017, at _____ (Eastern time), as further described below and in the Bid Procedures Order, the Bankruptcy Court shall conduct the "Sale Hearing" at which the Debtor shall seek entry of the Sale Order authorizing and approving the sale of the Assets to the Stalking Horse Purchaser or to one or more other Qualified Bidders (defined below) that the Debtor, in its sole discretion (in consultation with the Committee), determine to have made the highest and best offer.

### *Agreement*

Prospective bidders should submit a proposed asset purchase agreement (a "Competing Agreement"), similar in form and substance, as modified, to the asset purchase agreement attached to the Motion as **Exhibit C** (the "Purchase Agreement"). Subject to the approval of the Court, the highest or best bidder at the auction will purchase the Assets, and assume certain executory contracts and unexpired leases, free and clear of any liens, claims or encumbrances. The transaction contemplated is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to Bankruptcy Code §§ 363 and 365.

---

[1] The Debtor in this chapter 11 case and the last four digits of the Debtor's U.S. tax identification number is Aquion Energy, Inc. (1370). The Debtor's headquarters is located at 32 39th Street, Pittsburgh, PA, 15201.

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion or Purchase Agreement, as applicable.

*Assets for Sale*

The Debtor is offering for sale the Assets, which generally consist of the manufacturing operations, substantially all of the other business assets and property associated with its battery technology. Except as otherwise provided in the Purchase Agreement, all of the Debtor's right, title and interest in and to the Assets subject thereto shall be sold free and clear of any Liens, Claims, interests and encumbrances (other than Permitted Liens and/or except as otherwise provided in the Competing Agreement) (collectively, the "Liens, Claims and Encumbrances") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Liens, Claims and Encumbrances to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Liens, Claims and Encumbrances applied against the Assets.

*Participation Requirements*

In order to participate in the bidding process and to or otherwise be considered for any purpose hereunder, a person interested in all or portions of the Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Debtor and its counsel, not later than five (5) business days before the Bid Deadline (defined below), unless otherwise waived by the Debtor in its sole discretion in consultation with the Official Committee of Unsecured Creditors (the "Committee"), the following:

a) Confidentiality Agreement. An executed confidentiality agreement ("Confidentiality Agreement") in form and substance acceptable to the Debtor;

b) Identification of Potential Bidder. Concurrently with its Bid, identification of the Potential Bidder, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction;

c) Corporate Authority. Concurrently with its Bid, written evidence satisfactory to Debtor of the Potential Bidder's chief executive officer or other appropriate senior executive's approval of the contemplated transaction;

d) Disclosure. Written disclosure of any connections or agreements with the Debtor, the Stalking Horse Purchaser, any other known Potential Bidder or Qualified Bidder (as defined below), and/or any officer, director or direct or indirect equity security holder of the Debtor; and

e) Proof of Financial Ability to Perform. Prior to or at the time of presentation of a Bid, written evidence that demonstrates the Potential Bidder has the necessary financial ability to close the contemplated transaction and provide adequate assurance of future performance under all contracts to be assumed in such contemplated transaction. Such information should include, *inter alia*, the following:

  (1) the Potential Bidder's current financial statements (audited if they exist);

  (2) contact names and numbers for verification of financing sources;

  (3) evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction; and

2

(4)    any such other form of financial disclosure of credit-quality support information or enhancement acceptable to the Debtor demonstrating that such Potential Bidder has the ability to close the contemplated transaction.

### *Designation as Qualified Bidder*

A "Qualified Bidder" is a Potential Bidder (or combination of Potential Bidders whose bids for the Assets of the Debtor do not overlap and who shall also be referred to herein as a single Qualified Bidder) that delivers the documents described above and otherwise satisfies the requirements of the Bid Procedures Order and the procedures set forth herein, and that the Debtor, in its discretion (in consultation with the Committee), determines is reasonably likely to submit a *bona fide* offer for the Assets and to be able to consummate a sale if selected as a Successful Bidder.

The Debtor, in its sole discretion and in consultation with the Committee, shall determine and notify the Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder.

The Stalking Horse Purchaser is a Qualified Bidder and is deemed to satisfy all Bid requirements as set forth below.

### *Access to Due Diligence Materials*

Only Potential Bidders that execute and deliver a confidentiality agreement satisfactory to the Debtor, in its sole discretion, are eligible to receive due diligence access or additional non-public information. The Debtor shall not be required to provide confidential or proprietary information to a Potential Bidder if the Debtor believes that such disclosure would be detrimental to the interests of the Debtor. If the Debtor determines that a Potential Bidder that has satisfied the Participation Requirements does not constitute a Qualified Bidder, then such Potential Bidder's right to receive due diligence access or additional non-public information shall terminate. The Debtor will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such Qualified Bidders. The Debtor shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined). The Debtor is not responsible for, and will bear no liability with respect to, any information obtained by Qualified Bidders in connection with the sale of the Assets.

### *Due Diligence From Bidders*

Each Potential Bidder and Qualified Bidder (each, a "Bidder") (and, collectively, "Bidders") shall comply with all requests for additional information and due diligence access by the Debtor or its advisors regarding such Bidder and its contemplated transaction. Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtor to determine that the Potential Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Debtor to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

### Bidding Process

The Debtor and its advisors, shall (in consultation with Committee): (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in

3

conducting their due diligence investigations, as permitted by the provisions hereof; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the Assets. The Debtor (in consultation with the Committee) shall have the right to adopt such other rules for the bidding process that are not inconsistent with the Bid Procedures Order that will better promote the goals of such process.

### Bid Deadline

On or before the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver written and electronic copies of its Bid to the Debtor, Aquion Energy, Inc., 32 39th Street, Pittsburgh, PA, 15201, Attn: Suzanne B. Roski, and Suzanne.roski@aquion-energy.com, with a copy to counsel for the Debtor, Pachulski Stang Ziehl & Jones LLP, 919 N. Market St., 17th Floor, Wilmington, Delaware 19801, Attn: Laura Davis Jones, not later than 4:00 p.m. (prevailing Eastern time) on June ____, 2017, by _____ p.m. prevailing Eastern Time (the "Bid Deadline"). The Debtor shall promptly provide copies of all Bids to counsel for the Committee.

A Bid received after the Bid Deadline shall not constitute a Qualified Bid, unless otherwise allowed by the Debtor in its sole discretion (in consultation with the Committee).

### Bid Requirements

To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Debtor (in consultation with the Committee) to satisfy each of the following conditions unless waived or modified by the Debtor in its sole discretion (in consultation with the Committee):

1. Good Faith Deposit. Each Bid must be accompanied by a deposit (the "Good Faith Deposit") in the form of a certified check or cash payable to the order of the Debtor in an amount to be determined by the Debtor, but in any event no less than 10% of the Bidder's offer. The Debtor reserves the right to modify the amount of the Good Faith Deposit in its discretion (in consultation with the Committee).

2. Minimum Bid. The consideration proposed by the Bid may include only cash and/or other consideration acceptable to the Debtor (in consultation with the Committee) in an amount of (1) no less than $3,026,000, which is the sum of: (a) the purchase price offered by the Stalking Horse Purchaser in the amount of $2,800,000; (b) $100,000 in cash as an initial overbid amount; and (c) $126,000, which is the dollar value of the Breakup Fee (as defined below), if any, in cash; and (2) the assumption of either all Assumed Liabilities that would be assumed by the Stalking Horse Purchaser under the Purchase Agreement or additional cash or other consideration of an equivalent value as determined by the Debtor in its business judgment. The amounts in (1)-(2) of this paragraph is referred to as a "Minimum Bid".

3. Irrevocable. The Bids of the Successful Bidder and the Back-up Bidder must be irrevocable until the earlier of (a) the closing of the transaction with the Successful Bidder, or (b) the date the Sale Order has become final and non-appealable (the earliest of the dates being the "Termination Date").

4. Principal Terms. A Bid must include an executed agreement pursuant to which the Qualified Bidder proposes to effectuate the contemplated transaction (the "Contemplated Transaction Documents") and a black-lined copy of the Competing Agreement marked to show all changes requested by the Qualified Bidder, including specification of the

4

proposed purchase price and any changes to any exhibits or schedules to the Competing Agreement. The terms and conditions of the Contemplated Transaction Documents must be, in the aggregate, not materially more burdensome to Debtor that the provisions contained in the Stalking Horse Purchaser's Purchase Agreement. A Bid must identify with particularity each and every condition to closing and all executory contracts and unexpired leases to be assumed and assigned pursuant to the Contemplated Transaction Documents. The Contemplated Transaction Documents must include a commitment to close by no later than the closing date set forth in section 2 of the Purchase Agreement. A Bid should propose a contemplated transaction involving all or substantially all of the Assets, provided, however, that the Debtor in its sole discretion (in consultation with the Committee) may consider proposals for less than substantially all the Assets if such proposals or combination of proposals maximizes the value of the Debtor's estate.

5.   Contingencies. A Bid may not be conditioned on obtaining financing or any internal approval or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties at or before closing or the satisfaction in all material respects at the closing of specified conditions. A Bid must disclose any governmental approvals identified by the Qualified Bidder other than as set forth in the Competing Agreement that may impact the evaluation of such Bid.

6.   Authorization to Bid and Identity of Bidder. A Bid must include evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body, or a statement as to why such approval is unnecessary) with respect to the submission, execution, delivery and closing of the Contemplated Transaction Documents. A Bid must also fully disclose the identity of such entity that is submitting the Bid, including the identity of each equity holder or other financial backer of the bidder if such bidder is formed for the purpose of submitting the bid.

7.   Financing Sources. A Bid must contain written evidence of a commitment for financing or other evidence of the ability to consummate the sale satisfactory to the Debtor (in consultation with the Committee) with appropriate contact information for such financing sources.

8.   No Fees Payable to Qualified Bidder. A Bid may not request or entitle the Qualified Bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment. Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under Bankruptcy Code § 503 related in any way to the submission of its Bid or the Bid Procedures.

9.   Immediate Payment of the Breakup Fee. A Bid must allow for the immediate payment of the Breakup Fee to the Stalking Horse Purchaser from the first proceeds of the cash portion of the purchase price of such Bid.

10.  Non-Reliance. A Bid must include an acknowledgement and representation of the Qualified Bidder that it has had an opportunity to conduct any and all due diligence regarding the Assets and Assumed Liabilities prior to making its bid, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, warranties, or guaranties, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or the physical condition of the Assets, the Assumed Liabilities, or the completeness of any information

5

provided in connection therewith or the Auction, except as expressly stated in the Contemplated Transaction Documents.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements and that satisfies the Bid Deadline requirement above shall constitute a "Qualified Bid," if the Debtor believes, in its sole discretion (in consultation with the Committee), that such Bid would be consummated if selected as the Successful Bid. The Debtor shall have the right to reject any and all bids that they believe, in its sole discretion (in consultation with the Committee), do not comply with the Bid Procedures. In the event that any Potential Bidder is determined by the Debtor not to be a Qualified Bidder, the Potential Bidder shall be refunded its Good Faith Deposit.

***Breakup Fee***

Recognizing the Stalking Horse Purchaser's expenditure of time, energy and resources, and that the Stalking Horse Purchaser provides a floor bid with respect to the Assets that it offers to purchase, the Debtor is authorized (pursuant to the Bid Procedures Order) to provide the following bidding protections to the Stalking Horse Purchaser.

1.  The Debtor has agreed to pay the Stalking Horse Purchaser, upon the terms set forth in the Purchase Agreement, (a) an amount equal to $126,000 as a breakup fee (the "Breakup Fee") pursuant to an in accordance with terms of the Purchase Agreement and Bid Procedures Order.

2.  Any Bid submitted on the Bid Deadline by a party or parties other than the Stalking Horse Purchaser must be in an amount that is sufficient to pay the Breakup Fee and result in additional consideration to the Debtor's estate in the amount of at least $100,000 (as compared to the Purchase Price offered by such Stalking Horse Purchaser), after payment of the Breakup Fee.

## Auction

If the Debtor receives at least one (1) Qualified Bid from a Qualified Bidder other than the Stalking Horse Purchaser prior to the Bid Deadline (unless such deadline is extended, as provided below), then the Debtor shall notify the Stalking Horse Purchaser and each other Qualified Bidder that the Debtor intends to conduct an auction (the "Auction") to consider all Qualified Bids and to determine the highest or otherwise best bid with respect to the Assets. The Debtor shall provide the Stalking Horse Purchaser, all Qualified Bidders and the Committee with copies of all Qualified Bids in advance of the Auction, but may exclude any confidential financial information, as reasonably designated by the applicable Qualified Bidder. Unless otherwise designated by the Debtor, the Auction shall commence at **10:00 a.m. (Eastern time) on**_____ **2017**, at the offices of Pachulski Stang Ziehl & Jones LLP, 919 N. Market St., 17th Floor, Wilmington, DE 19899.

In advance of the Auction, the Debtor will notify all Qualified Bidders in writing of (i) the highest or otherwise best Qualified Bid, as determined by the Debtor in its discretion (the "Baseline Bid") and (ii) the time and place of the Auction.

If the Debtor does not receive at least one (1) Qualified Bid from a Qualified Bidder other than the Stalking Horse Purchaser, then no Auction shall be scheduled or conducted, and the Court at the Sale Hearing shall proceed to solely consider the approval of the proposed sale to the Stalking Horse Purchaser as set forth in the Purchase Agreement and shall not consider any competing or alternative offers or proposals to purchase the Assets.

If the Auction is necessary, such Auction shall be conducted according to the following procedures:

1.    **Participation at the Auction**

Only the Stalking Horse Purchaser and Qualified Bidders that have submitted Qualified Bids are eligible to participate at the Auction. Only the authorized representatives and professional advisors of each of the Qualified Bidders, the Debtor, the Committee, and the U.S. Trustee shall be permitted to attend the Auction.

Except as otherwise set forth herein, the Debtor (in consultation with the Committee) may conduct the Auction in the manner it determines will result in the highest or best offer for the Assets.

In the Debtor's sole discretion, after the conclusion of the Auction, the Debtor may resume an auction for the sale of discrete assets and/or discrete groups of assets, if any, which are not included in the Successful Bid, on such bidding procedures as may be implemented by the Debtor in its discretion.

2.    **The Debtor Shall Conduct the Auction**

The Debtor and its professionals shall direct and preside over the Auction. At the start of the Auction, the Debtor shall describe the terms of the Baseline Bid. The determination of which Qualified Bid constitutes the Baseline Bid shall be made by the Debtor in its discretion (in consultation with the Committee), and may take into account any factors the Debtor reasonably deems relevant to the value of the Qualified Bid to the estate (the "Bid Assessment Criteria"). All Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Debtor reserves the right to conduct the Auction in the manner designed to maximize value based upon the nature and extent of the Qualified Bids received. The Debtor shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid. Pursuant to Local Rule 6004-1, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the Bid Procedures, the Auction or the proposed transaction.

3.    **Terms of Overbids**

An "Overbid" is any bid made at the Auction subsequent to the Debtor's announcement of the Baseline Bid. To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

(a)    **Minimum Overbid Increment**

During the Auction, bidding shall begin initially with the Baseline Bid. Any Overbid after the Baseline Bid shall be made in increments of at least $50,000 in cash or other consideration acceptable to the Debtor; *provided, however*, that any overbids by the Stalking Horse Purchaser thereafter shall only be required to be equal to the sum of (1) the then existing lead Bid plus (2) the $50,000 Overbid less (3) $126,000 (i.e. the amount of the Breakup Fee).

Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtor (in consultation with the Committee) accepts a higher Qualified Bid as an Overbid.

7

(b)   **Consideration of Overbids**

The Debtor reserves the right, in its reasonable business judgment, to make one or more adjournments in the Auction to, among other things: facilitate discussions between the Debtor and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor, in its reasonable business judgment, may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

4.   **Additional Procedures**

The Debtor may adopt rules for the Auction at or prior to the Auction that, in its reasonable discretion (in consultation with the Committee), will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bid Procedures Order or the Bankruptcy Code. All such rules will provide that all Bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (*i.e.*, the principals submitting the Bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.

The Debtor (in consultation with the Committee) may (a) determine which Qualified Bid, if any, is the highest and best offer and (b) reject at any time before entry of an order of the Bankruptcy Court approving the sale of the Assets pursuant to a Qualified Bid, any Bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code or these Bid Procedures; or (iii) contrary to the best interest of the Debtor, its estate and its creditors.

The Debtor may, in its sole discretion (in consultation with the Committee), extend the Bid Deadline or the Auction Date, as determined, beyond the dates provided herein. In the event of such an extension, the Debtor shall provide notice to the Notice Parties and any Qualified Bidders of such extension, any related time and location details with respect to same, and any consequent continuance of the Sale Hearing.

5.   **Consent to Jurisdiction as Condition to Bidding**

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of each Qualified Bidder's Contemplated Transaction Documents, as applicable.

6.   **Closing the Auction**

Upon conclusion of the bidding, the Auction shall be closed, and the Debtor (in consultation with the Committee) shall immediately identify the highest or best offer for the Assets (which may be an aggregate of bids for less than all of the Assets) (the "Successful Bid") and the entity submitting such Successful Bid (the "Successful Bidder"), which highest or best offer will provide the greatest amount of net value to the Debtor, and the next highest or best

8

offers after the Successful Bid (the "<u>Back-up Bid</u>") and the entity or entities submitting the Back-up Bid (the "<u>Back-up Bidder</u>"), and advise the Qualified Bidders of such determination. Upon three (3) days' prior notice by the Debtor, the Back-up Bidder selected by the Debtor must immediately proceed with the closing of the transaction contemplated under the Back-up Bid in the event that the transaction with the Successful Bidder is not consummated for any reason.

As stated above, The Bids of the Successful Bidder and the Back-up Bidder must be irrevocable until the Termination Date.

<u>Acceptance of Successful Bid</u>

The Debtor shall sell the Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Debtor's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of such Qualified Bid. The Debtor will be deemed to have accepted a Qualified Bid only when the Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing.

<u>"As Is, Where Is"</u>

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents or its estate except to the extent set forth in the Competing Agreement of the Successful Bidder. Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bid Procedures or the Competing Agreement of the Successful Bidder.

<u>Free of Any and All Interests</u>

Except as otherwise provided in the Successful Bidder's Competing Agreement and subject to the approval of the Bankruptcy Court, all of Debtor's right, title and interest in and to the Assets subject thereto shall be sold free and clear of any Liens, Claims, and Encumbrances to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Liens, Claims and Encumbrances to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Liens, Claims and Encumbrances applied against the Assets.

<u>Sale Hearing</u>

The Sale Hearing shall be conducted by the Bankruptcy Court on _____, 2017, at _____ (Eastern time), or on such other date as may be established by the Bankruptcy Court.

If the Successful Bidder fails to consummate an approved sale in accordance with the applicable asset purchase agreement or such agreement is terminated, the Debtor shall be authorized, but not required, to deem the Back-up Bid, as disclosed at the Sale Hearing, the Successful Bids, and the Debtor shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting the next highest such Bid without further order of the Bankruptcy Court.

9

## **Return of Good Faith Deposit**

The Good Faith Deposit of the Successful Bidder (or the Back-up Bidder that becomes a Successful Bidder) shall be applied to the purchase price of such transaction at Closing. The Debtor will hold the Good Faith Deposits of the Successful Bidder and the next highest Qualified Bidder in a segregated account until the closing of the sale with the Successful Bidder; good Faith Deposits of all other Qualified Bidders shall be held in a segregated account, and thereafter returned to the respective bidders following the conclusion of the Auction. If a Successful Bidder (including any Back-up Bidder that has become the Successful Bidder) fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtor shall be entitled to retain the Successful Bidder's Good Faith Deposit as part of the Debtor's damages resulting from such Successful Bidder's breach or failure to perform.

10

**Exhibit 2**

**Form of Sale and Bid Procedures Notice**

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AQUION ENERGY, INC., [1] | ) | Case No. 17-10500 (KJC) |
| | ) | |
| Debtor. | ) | |

**Deadline for Submitting Bids: [To be determined] (Eastern time)**
**Deadline for Objections to Sale: [To be determined] (Eastern time)**
**Auction Date: [To be determined] (Eastern time)**
**Sale Hearing Date: [To be determined] (Eastern time)**

## NOTICE OF SALE PROCEDURES, AUCTION DATE
## AND SALE HEARING FOR SUBSTANTIALLY ALL OF DEBTOR'S ASSETS

**PLEASE TAKE NOTICE** that on May___, 2017, the above-captioned debtor

and debtor in possession (the "Debtor") filed the *Motion for Entry of an Order (I)(A)*

*Authorizing Entry into the Asset Purchase Agreement with Respect to the Sale of Substantially*

*all of the Debtor's Assets; (B) Approving Bid Procedures for the Sale of Substantially All of the*

*Assets of Debtor; (C) Scheduling an Auction and Hearing to Consider the Sale and Approve the*

*Form and Manner of Notice Related Thereto; (D) Establishing Procedures Relating to the*

*Assumption and Assignment of Certain Contracts and Leases, Including Notice of Proposed*

*Cure Amounts; (E) Approving Certain Breakup Fee Provisions; (II) Authorizing and Approving*

*(A) the Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances and Interests*

*and (B) the Assumption and Assignment of Certain Contracts and Leases; And (III) Granting*

*Related Relief* (the "Motion").[2] On _____, 2017, the Court entered an order (the "Bid

---

[1] The Debtor in this chapter 11 case and the last four digits of the Debtor's U.S. tax identification number is Aquion Energy, Inc. (1370). The Debtor's headquarters is located at 32 39th Street, Pittsburgh, PA, 15201.

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.

Procedures Order") granting the Motion in part and approving the bid procedures annexed hereto

(the "Bid Procedures") to be used in connection with the auction (the "Auction") of the Debtor's

assets (the "Assets").  The Assets are being sold free and clear of all liens, claims, encumbrances

and interests, provided that section 363(f) of the Bankruptcy Code has been satisfied.  The

Debtor has identified Bluesky Energy US, Inc. as the "stalking horse" bidder for the Assets (the

"Stalking Horse Purchaser").

### Bid Procedures and Auction

**PLEASE TAKE FURTHER NOTICE** that the Bid Procedures approved by the

Bid Procedures Order, a copy of which are attached hereto as **Exhibit 1,** describe, *inter alia*, the

terms of the bidding process, the requirements and deadlines for participation therein, required

terms of any bids, and the time, location and conduct of the Auction.  In the event of any

inconsistency or conflict between this Notice, the Bid Procedures and the Bid Procedures Order,

the Bid Procedures Order shall control.

### The Sale Hearing

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has scheduled

a hearing for _____, 2017 at _____ **(Eastern Time)** (the "Sale Hearing") to

consider approval of the winning bid(s) and confirm the results at the Auction for the Assets,

pursuant to the Motion.  The Sale Hearing may, however, be adjourned in open court from time

to time, without further notice.  The Sale Hearing will be held before the Honorable Kevin J.

Carey, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of

Delaware, 824 North Market Street, 5th Floor, Courtroom No. 5, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE** that the Bid Procedures annexed hereto shall govern the bidding process and the Auction of the Assets. Any person that wishes to receive a copy of the Bid Procedures Order shall make such request in writing to Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 (Courier 19801), Attn: Laura Davis Jones, ljones@pszjlaw.com.

## Objections

**PLEASE TAKE FURTHER NOTICE** that any objection to any of the relief to be requested at the Sale Hearing must be in writing, state the basis of such objection with specificity, and shall be filed with the Court, with a courtesy copy to Chambers, and shall be served on: (i) counsel to the Debtor and Debtor-in-Possession, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: Laura Davis Jones, Esq.; (ii) counsel to the Official Committee of Unsecured Creditors: (a) Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, New York 10020, Attn: Jeffrey Cohen, Esq. and Barry Z. Bazian, Esq.; (b) Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ 07068, Attn: Andrew David Behlmann, Esq.; (c) Klehr Harrison Harvey Branzburg LLP, 919 Market Street, Suite 1000, Wilmington, Delaware 19801, Attn: Richard M. Beck, Esq. and Sally E. Veghte, Esq.; (iii) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 N. King Street, Suite 2207, Lock Box 35, Wilmington, DE 19801, Attn: Hannah McCollum, Esq.; and (iv) counsel to the Stalking Horse Purchaser: Barnes & Thornburg LLP, One North Wacker Drive, Suite 4400, Chicago, IL 60606, Attn: Kevin C. Driscoll, Jr., Esq., so as to be received by _____, **2017, at** _____

3

**p.m. (Eastern Time)**.

   **PLEASE TAKE FURTHER NOTICE** that all requests for information

concerning the Assets and all requests for information concerning the Bid Procedures, should be

directed in writing to Pachulski Stang Ziehl & Jones LLP, 919 N. Market St., 17th Floor,

Wilmington, Delaware  19801, Attn: Laura Davis Jones, ljones@pszjlaw.com.


Dated: June ___, 2017   PACHULSKI STANG ZIEHL & JONES LLP


          _____
          Laura Davis Jones (Bar No. 2436)
          David M. Bertenthal (CA Bar No. 167624)
          Joseph M. Mulvihill (Bar No. 6061)
          919 North Market Street, 17th Floor
          P.O. Box 8705
          Wilmington, Delaware  19899-8705 (Courier 19801)
          Telephone:  302-652-4100
          Facsimile:  302-652-4400
          email:  ljones@pszjlaw.com
             dbertenthal@pszjlaw.com
             jmulvihill@pszjlaw.com

          Counsel for Debtor and Debtor in Possession

## Exhibit 3

**Form of Creditor Notice**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AQUION ENERGY, INC.,[1] | ) | Case No. 17-10500 (KJC) |
| | ) | |
| Debtor. | ) | |

**Deadline for Submitting Bids: [To be determined] (Eastern time)**
**Deadline for Objections to Sale: [To be determined] (Eastern time)**
**Auction Date: [To be determined] (Eastern time)**
**Sale Hearing Date: [To be determined] (Eastern time)**

## NOTICE OF AUCTION AND SALE HEARING FOR DEBTOR'S ASSETS

**PLEASE TAKE NOTICE** that on May___, 2017, the above-captioned debtor

and debtor in possession (the "Debtor") filed the *Motion for Entry of an Order (I)(A)*

*Authorizing Entry into the Asset Purchase Agreement with Respect to the Sale of Substantially*

*all of the Debtor's Assets; (B) Approving Bid Procedures for the Sale of Substantially All of the*

*Assets of Debtor; (C) Scheduling an Auction and Hearing to Consider the Sale and Approve the*

*Form and Manner of Notice Related Thereto; (D) Establishing Procedures Relating to the*

*Assumption and Assignment of Certain Contracts and Leases, Including Notice of Proposed*

*Cure Amounts; (E) Approving Certain Breakup Fee Provisions; (II) Authorizing and Approving*

*(A) the Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances and Interests*

*and (B) the Assumption and Assignment of Certain Contracts and Leases; and (III) Granting*

*Related Relief* (the "Motion").[2] On _____, 2017, the Court entered an order (the "Bid

---

[1] The Debtor in this chapter 11 case and the last four digits of the Debtor's U.S. tax identification number is Aquion Energy, Inc. (1370).  The Debtor's headquarters is located at 32 39th Street, Pittsburgh, PA, 15201.

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.

Procedures Order") granting the Motion in part and approving certain bid procedures (the "Bid Procedures") to be used in connection with the auction (the "Auction") of the Debtor's assets described in the Motion (the "Assets").  The Assets are being sold free and clear of all liens, claims, encumbrances and interests.  The Debtor has identified Bluesky Energy US, Inc. as the "stalking horse" bidder for the Assets (the "Stalking Horse Purchaser").  The Bid Procedures shall govern the bidding process and the Auction of the Assets.  Any person that wishes to receive a copy of the Bid Procedures or the Bid Procedures Order shall make such request in writing to Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 (Courier 19801), Attn:  Laura Davis Jones.

### The Sale Hearing

PLEASE TAKE FURTHER NOTICE that the Bankruptcy Court has scheduled a hearing for _____ (Eastern Time) (the "Sale Hearing") to consider approval of the winning bid(s) and confirm the results at the Auction for the Assets, pursuant to the Motion.  The Sale Hearing may, however, be adjourned in open court from time to time, without further notice.  The Sale Hearing will be held before the Honorable Kevin J. Carey, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom No. 5, Wilmington, Delaware 19801.

### Objections

PLEASE TAKE FURTHER NOTICE that any objection to any of the relief to be requested at the Sale Hearing must be in writing, state the basis of such objection with specificity, and shall be filed with the Court, with a courtesy copy to Chambers, and shall be

2

served on: (i) counsel to the Debtor and Debtor-in-Possession, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: Laura Davis Jones, Esq.; (ii) counsel to the Official Committee of Unsecured Creditors: (a) Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, New York 10020, Attn: Jeffrey Cohen, Esq. and Barry Z. Bazian, Esq.; (b) Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ 07068, Attn: Andrew David Behlmann, Esq.; (c) Klehr Harrison Harvey Branzburg LLP, 919 Market Street, Suite 1000, Wilmington, Delaware 19801, Attn: Richard M. Beck, Esq. and Sally E. Veghte, Esq.; (iii) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 N. King Street, Suite 2207, Lock Box 35, Wilmington, DE 19801, Attn: Hannah McCollum, Esq.; and (iv) counsel to the Stalking Horse Purchaser: Barnes & Thornburg LLP, One North Wacker Drive, Suite 4400, Chicago, IL 60606, Attn: Kevin C. Driscoll, Jr., Esq., so as to be received by _____, **2017, at** _____ **p.m. (Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that all requests for information concerning the Assets and all requests for information concerning the Bid Procedures, should be directed in writing to Pachulski Stang Ziehl & Jones LLP, 919 N. Market St., 17th Floor, Wilmington, Delaware 19801, Attn: Laura Davis Jones, ljones@pszjlaw.com.

Dated: May ___, 2017          PACHULSKI STANG ZIEHL & JONES LLP


Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Joseph M. Mulvihill (Bar No. 6061)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: 302-652-4100
Facsimile: 302-652-4400
email: ljones@pszjlaw.com
        dbertenthal@pszjlaw.com
        jmulvihill@pszjlaw.com

Counsel for Debtor and Debtor in Possession

4

**<u>Exhibit 4</u>**

**Form of Cure Notice**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AQUION ENERGY, INC.,[1] | ) | Case No. 17-10500 (KJC) |
| | ) | |
| Debtor. | ) | |

**Deadline for Submitting Bids: [To be determined] (Eastern time)**
**Deadline for Objections to Sale: [To be determined] (Eastern time)**
**Auction Date: [To be determined] (Eastern time)**
**Sale Hearing Date: [To be determined] (Eastern time)**

## NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED

**PLEASE TAKE NOTICE** that on March 8, 2017 (the "Petition Date"), the above-captioned debtor and debtor in possession (the "Debtor") filed a voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code").

**PLEASE TAKE FURTHER NOTICE** that on May___, 2017, the above-captioned debtor and debtor in possession (the "Debtor") filed the *Motion for Entry of an Order (I)(A) Authorizing Entry into the Asset Purchase Agreement with Respect to the Sale of Substantially all of the Debtor's Assets; (B) Approving Bid Procedures for the Sale of Substantially All of the Assets of Debtor; (C) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto; (D) Establishing Procedures Relating to the Assumption and Assignment of Certain Contracts and Leases, Including Notice of Proposed Cure Amounts; (E) Approving Certain Breakup Fee Provisions; (II) Authorizing and*

---

[1] The Debtor in this chapter 11 case and the last four digits of the Debtor's U.S. tax identification number is Aquion Energy, Inc. (1370). The Debtor's headquarters is located at 32 39th Street, Pittsburgh, PA, 15201.

*Approving (A) the Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances and Interests and (B) the Assumption and Assignment of Certain Contracts and Leases; And (III) Granting Related Relief* (the "Motion").[2] On _____, 2017, the Court entered an order (the "Bid Procedures Order") granting the Motion in part and approving the bid procedures annexed hereto (the "Bid Procedures") to be used in connection with the auction (the "Auction") of the Debtor's assets described in the Motion (the "Assets") pursuant to the asset purchase agreement annexed as Exhibit C to the Motion (the "Purchase Agreement") by and between the Debtor and the Stalking Horse Purchase (defined below). The Assets are being sold free and clear of all liens, claims, encumbrances and interests. The Debtor has proposed to sell the Assets to either Bluesky Energy US, Inc., who is the "stalking horse" bidder for the sale of the Assets (the "Stalking Horse Purchaser") or, alternatively, to any successful bidder for the Assets following the Auction (a "Successful Bidder").

**PLEASE TAKE FURTHER NOTICE** that the hearing on the Motion has been set for _____, **2017, at** _____ **(Eastern Time)** before the Honorable Kevin J. Carey, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom No. 5, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE** that you are a party to an executory contract(s) or unexpired lease(s) that has been designated for assumption by the Debtor and assignment to the Stalking Horse Purchaser, or alternatively, to the Successful Bidder (each an "Assumed Executory Contract") amount shown on **Exhibit A** attached to this Notice as the

---

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.

DOCS_DE:212988.20 05436/001

"Cure Amount" for the Assumed Executory Contract listed on **Exhibit A** to which you are a party is the amount, based upon the Debtor's books and records, which the Debtor asserts is owed to cure any defaults existing under the Assumed Executory Contract as of the Petition Date.[3]

        **PLEASE TAKE FURTHER NOTICE** that a Successful Bidder, as applicable, may subsequently elect to exclude any agreement or agreements from the list of Assumed Executory Contracts at any time prior to the closing of the sale of the Assets, including the potential exclusion of the Assumed Executory Contract listed on **Exhibit A** hereto.  Cure Amounts, if any, shall only be paid with respect to Assumed Executory Contracts that are actually assumed pursuant to the closing of the sale of the assets in accordance with the Purchase Agreement, or the purchase agreement of the Successful Bidder.  In the event that a Successful Bidder elects to exclude any Assumed Executory Contracts, the affected counterparties will be separately notified of any such election.

        **PLEASE TAKE FURTHER NOTICE** that if you disagree with the Cure Amount shown for the Assumed Executory Contract on **Exhibit A,** or if you object to the assumption and assignment of your Assumed Executory Contract on any grounds, you must file an objection in writing with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, on or before _____, **2017, at** _____ **(Eastern Time)**.  In addition, any objection must set forth the specific default or defaults alleged,

---

[3] Your receipt of this notice does not constitute an admission by the Debtor that your agreement actually constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code, and the Debtor expressly reserves the right to challenge the status of any agreement.

3

set forth any such other ground for objection, and set forth any Cure Amount as alleged by you, including such documentation and records as supports your asserted cure amount.

       **PLEASE TAKE FURTHER NOTICE** that any objection to any of the relief to be requested at the Sale Hearing must be in writing, state the basis of such objection with specificity, and shall be filed with the Court, with a courtesy copy to Chambers, and shall be served on:  (i) counsel to the Debtor and Debtor-in-Possession, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE  19899-8705 (Courier 19801), Attn:  Laura Davis Jones, Esq.; (ii) counsel to the Official Committee of Unsecured Creditors: (a) Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, New York 10020, Attn: Jeffrey Cohen, Esq. and Barry Z. Bazian, Esq.; (b) Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ  07068, Attn: Andrew David Behlmann, Esq.; (c) Klehr Harrison Harvey Branzburg LLP, 919 Market Street, Suite 1000, Wilmington, Delaware 19801, Attn: Richard M. Beck, Esq. and Sally E. Veghte, Esq.; (iii) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 N. King Street, Suite 2207, Lock Box 35, Wilmington, DE 19801, Attn: Hannah McCollum, Esq.; and (iv) counsel to the Stalking Horse Purchaser: Barnes & Thornburg LLP, One North Wacker Drive, Suite 4400, Chicago, IL 60606, Attn: Kevin C. Driscoll, Jr., Esq., so as to be received by _____**, 2017, at** _____ **p.m. (Eastern Time)**.

       **PLEASE TAKE FURTHER NOTICE THAT IF YOU DO NOT TIMELY FILE AND SERVE AN OBJECTION OR OBJECTIONS AS STATED ABOVE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT**

4

FURTHER NOTICE.  ANY NON-DEBTOR PARTY TO ANY ASSUMED EXECUTORY CONTRACT WHO DOES NOT FILE A TIMELY OBJECTION TO THE CURE AMOUNTS FOR SUCH ASSUMED EXECUTORY CONTRACT IS DEEMED TO HAVE CONSENTED TO SUCH CURE AMOUNTS, AND ANY NON-DEBTOR PARTY TO ANY ASSUMED CONTRACT WHO DOES NOT FILE A TIMELY OBJECTION ON OTHER GROUNDS IS DEEMED TO HAVE CONSENTED TO SUCH ASSIGNMENT AND ASSUMPTION.

Dated: _____, 2017          PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Joseph M. Mulvihill (Bar No. 6061)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705 (Courier 19801)
Telephone:  302-652-4100
Facsimile:  302-652-4400
email:  ljones@pszjlaw.com
        dbertenthal@pszjlaw.com
        jmulvihill@pszjlaw.com

Counsel for Debtor and Debtor in Possession

DOCS_DE:212988.20 05436/001