IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AQUION ENERGY, INC., [1] | ) | Case No. 17-10500 (KJC) |
| | ) | |
| Debtor. | ) | |

**Objection Deadline: July 12, 2017 at 4:00 p.m. (ET)**
**Hearing Date: July 19, 2017 at 11:00 a.m. (ET)**

## MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER EXTENDING THE EXCLUSIVITY PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE

The above-captioned debtor and debtor in possession (the "Debtor") files this motion (this "Motion") for the entry of an order, substantially in the form attached hereto as **Exhibit A**, extending the periods established in sections 1121(c)(2), 1121(c)(3), and 1121(d) of Title 11 of the United States Code (the "Bankruptcy Code") within which only the Debtor may file a plan and obtain acceptances of the plan (the "Exclusivity Periods") by a period of approximately 120 days. In support of the Motion, the Debtor respectfully states as follows:

### Introduction

1.      Less than four months from the Petition Date, the Debtor has made substantial progress towards achieving its chapter 11 goals, but significant works remains to be done. The

---

[1] The Debtor in this chapter 11 case and the last four digits of the Debtor's U.S. tax identification number is Aquion Energy, Inc. (1370). The Debtor's headquarters is located at 32 39th Street, Pittsburgh, PA, 15201.

Debtor therefore seeks an extension of the Exclusivity Periods of approximately 120 days as provided herein.[2]

2.    Since filing for chapter 11 relief, the Debtor has, among other things:

- stabilized the Debtor through the approval of various crucial first day motions;

- promptly completed its schedules of assets and liabilities and statements of financial affairs, which were filed on April 11, 2017;

- sold or abandoned certain assets pursuant to the *Order Approving Procedures for the Sale Transfer, and Abandonment of De Minimis Assets* [Docket No. 94];

- rejected certain burdensome contracts pursuant to the *Order Authorizing the Debtor to Reject Certain Unexpired Leases and Executory Contracts Nunc Pro Tunc to the Petition Date* [Docket No. 122];

- negotiated and obtained final approval for the use of the Debtor's cash collateral [Docket No. 202];

- selected a stalking horse for the purchase of substantially all of the Debtor's assets and filed the *Motion for Entry of an Order (I) (A) Authorizing Entry Into the Asset Purchase Agreement with Respect to the Sale of Substantially All of the Debtor's Assets, (B) Approving Bid Procedures for the Sale of Substantially All of the Assets of Debtor, (C) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notices Related Thereto, (D) Establishing Procedures Relating to the Assumption and Assignment of Certain Contracts and Leases, Including Notice of Proposed Cure Amounts, (E) Approving Certain Breakup Fee Provisions; (II) Authorizing and Approving (A) the Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances and Interests and (B) the Assumption and Assignment of Certain Contracts and Leases; and (III) Granting Related Relief Fee Amount $181 Filed by Aquion Energy, Inc.* [Docket No. 168] (the "Sale and Bidding Procedures Motion"); and

- held an auction pursuant to the Sale and Bidding Procedures Motion for the sale of substantially all of its assets for June 20, 2017, where Juline-Titans

---

[2]    The Debtor notes that it has filed this Motion prior to the expiration of the current deadline for the Exclusivity Periods that would otherwise expire on July 6, 2017—*i.e.*, 120 days following the Petition Date. Pursuant to Local Rule 9006-2, "if a motion to extend the time to take any action is filed before the expiration of the period prescribed by the [Bankruptcy] Code, the [Bankruptcy Rules], these Local Rules or Court order, the time shall automatically be extended until the Court acts on the motion, without the necessity for the entry of a bridge order." Accordingly, Local Rule 9006-2 automatically extends the Filing Exclusivity Period pending the Court's hearing to consider the relief requested by this Motion.

LLC was deemed to have summited the highest and best offer for the Assets (the "Successful Bidder"), and Enpower Energy Corp., Ltd. was deemed to have submitted the next highest and best offer for the Assets (the "Back-up Bidder"). The final sale price was over $9,000,000, which was approximately three times higher than the stalking horse bid. On June 21, 2017, the Bankruptcy Court entered an order granting the Sale and Bidding Procedures Motion [Docket No. 248].

3.      Throughout this process, the Debtor has worked closely with the Committee (as defined herein) and other significant parties in interest. But, as noted above, much remains to be done, and the exclusivity deadlines are quickly approaching.

4.      The Debtor, with the help of its advisors, has made substantial progress in organizing and conducting a thorough sale process. The Debtor's ability to conclude the sale process and continue moving its plan process forward, as well as obtain consensus from key parties with respect to same, would be seriously disrupted if another party were permitted to file a plan. Given the success of the sale process, the Debtor expects to move forward with a bar date and plan process once the sale has closed.

5.      Accordingly, the Debtor seeks an extension of the exclusivity period in which the Debtor may file and solicit acceptances of a chapter 11 plan. The Debtor believes that maintaining the exclusive right to file and solicit votes on a chapter 11 plan is critical to consummating its chapter 11 strategy. Extending the Exclusivity Periods will afford the Debtor and its stakeholders time to negotiate and confirm a plan, finalize the transactions contemplated by the plan, and proceed toward liquidation in an efficient, organized fashion. Therefore, the Debtor requests an extension of the Exclusivity Periods by 120 days to allow the Debtor to focus on continuing to advance the process and to preclude the costly disruption and instability that would occur if competing plans were to be proposed.

DOCS_DE:213854.3 05436/001

**Jurisdiction**

6.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as

defined in 28 U.S.C. § 157(b)(2).

7.      The statutory predicate for the relief requested herein is section 1121(d) of the

Bankruptcy Code.

**Background**

8.      On March 8, 2017 (the "Petition Date"), the Debtor filed with this Court a

voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating

its business and managing its properties as a debtor and debtor in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code. On March 31, 2017, the Office of the United States

Trustee appointed a committee of unsecured creditors (the "Committee") in this case.

9.      The Debtor manufactures saltwater batteries with a proprietary, environmentally-

friendly electrochemical design. Based in Pittsburgh, the Debtor was founded in 2008 and had

its first commercial product launch in 2014. Designed for stationary energy storage in pristine

environments, island locations, homes, and businesses, the Debtor's batteries have been Cradle

to Cradle Certified™, an environmental sustainability certification that has never previously

been given to a battery producer. The Debtor's battery technology has won multiple prestigious

awards including Popular Science Best of What's New Innovation of the Year (2014), MIT

Technology Review 50 Smartest Companies (2015), Global Cleantech 100 North American

Company of the Year (2017), among others. The Debtor's batteries contain no heavy metals or

toxic chemicals and are non-flammable and non-explosive. The Debtor's products include

battery stacks, modules and monitoring systems. More than 55 global dealers and distributors

4

sell the Debtor's products directly to end users and other customers that incorporate the batteries into third party systems and equipment such as inverters, controls, solar/wind generators, gensets, racking, and enclosures.

10.    On May 24, 2017, the Debtor filed the Sale and Bidding Procedures Motion. The Sale and Bidding Procedures Motion sought to sell assets of the Debtor to the Stalking Horse Purchaser (as defined in the Sale and Bidding Procedures Motion) and approve related bidding procedures. On June 6, 2017, the Court entered an order (the "Bid Procedures Order") granting the Sale and Bidding Procedures Motion in part and approving the bid procedures (the "Bid Procedures") to be used in connection with the auction (the "Auction") of the Debtor's assets described in the Sale and Bidding Procedures Motion (the "Assets").

11.    Following an Auction conducted on June 20, 2017, Juline-Titans LLC was deemed to have submitted the highest and best offer for the Assets and is the Successful Bidder, and Enpower Energy Corp., Ltd. was deemed to have submitted the next highest and best offer for the Assets. The final sale price was over $9,000,000, which was approximately three times greater than the stalking horse bid. On June 21, 2017, the Bankruptcy Court entered an order granting the Sale and Bidding Procedure Motion.

12.    The current deadline (a) for which only the Debtor may file a plan is July 6, 2017 and (b) for which only the Debtor may solicit acceptances of such plan is September 5, 2017.

### Relief Requested

13.    By this Motion, the Debtor respectfully requests that this Court, pursuant to section 1121(d) of the Bankruptcy Code, extend the Exclusivity Period for filing a plan by approximately 120 days through and including November 3, 2017, and through and including January 3, 2018, for obtaining acceptances of such plan.

5

**Basis for Relief Requested**

14.    Section 1121(d) of the Bankruptcy Code grants this Court authority to extend the Exclusivity Periods "for cause" after notice and hearing.  Although the term "cause" is not defined by the Bankruptcy Code, the legislative history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an agreement." H.R. Rep. No. 95 95th Cong., 1st Sess. 232 (1997), *see also, In re McLean Indus., Inc.,* 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987) (quoting H.R. Rep. No. 595, 95th Cong., 2d Sess. 231 (1978), *reprinted in* 1978, U.S.C.C.A.N. 5963, 6190) and *In re Public Serv. Co. of New Hampshire,* 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("[T]he legislative intent. . . [is] to promote maximum flexibility.")).

15.    To facilitate this legislative intent, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and non-financial information concerning the ramifications of any proposed plan for disclosure to creditors. *See, e.g., In re McLean Indus., Inc.,* 87 B.R. at 833-34; *In re Texaco Inc.,* 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

16.    The decision to extend a debtor's exclusive period is committed to the sound discretion of the bankruptcy court, based upon the facts and circumstances of each particular case. *See, e.g., First American Bank of New York v. Southwest Gloves & Safety Equip., Inc.,* 64 B.R. 963, 965 (D. Del. 1986).  Courts examine a number of factors to determine whether "cause" exists to extend the Exclusivity Periods.  These factors include the following:

      a.     the size and complexity of the case;

      b.     the existence of good faith progress;

      c.     the necessity of sufficient time to negotiate and prepare adequate information;

      d.     whether creditors are prejudiced by the extension;

e.  whether the debtor is paying its debts as they become due;

f.  whether the debtor has demonstrated reasonable prospects for filing a viable plan;

g.  whether the debtor has made progress negotiating with creditors;

h.  the length of time a case had been pending;

i.  whether the debtor is seeking an extension to pressure creditors; and

j.  whether or not unresolved contingencies exist.

See *McLean Indus.*, 87 B.R. at 834.

### Cause Exists for an Extension of the Debtor's Exclusivity Periods

17.  The Debtor submits that sufficient "cause" exists pursuant to section 1121(d) to extend the Exclusivity Periods by approximately 120 days, as several of the above-noted factors are present.

18.  First, the Debtor is in the midst of concluding its sale process after a successful Auction. The Debtor's ability to finalize its plan process, as well as obtain consensus with key parties with respect to same, would be seriously disrupted if another party were permitted to file a plan.

19.  Second, after the conclusion of the sale process, the Debtor anticipates establishing bar dates and proceeding towards a plan. The Debtor will need to begin the process of reconciling the proofs of claim received with its Schedules. This effort will lead to various omnibus claim objections and will allow the Debtor to better understand the total number and amount of claims outstanding.

20.  Third, the Debtor will use the extension to investigate and monetize any remaining assets of the Debtor's estate. It is important for all parties to understand the proceeds

available for distribution before evaluating how to conclude these cases. Lastly, the extension will enable the Debtor to engage the Committee in discussions on the appropriate exit strategy.

21.     Based upon the foregoing, the Debtor needs additional time to propose a plan. The Debtor is not seeking an extension of time to pressure creditors. The Debtor has been diligent in administering these cases by, among other things, proceeding with the sale of substantially all assets of the Debtor, rejecting certain burdensome contracts and leases, and preparing for the claims reconciliation process. The Debtor merely requires additional time in order to maximize the value of its estate. Moreover, the Debtor has access to sufficient available cash to pay its debts as they become due and have been doing so.

22.     Accordingly, by this Motion, the Debtor seeks to extend the Exclusivity Periods for approximately 120 days, without prejudice to the Debtor's right to request further extensions. The Debtor submits that the extension is reasonable and appropriate under the circumstances and should be granted as being in the best interests of the Debtor's estate and creditors.

### Notice

23.     Notice of this Motion has been given to the following parties, or their counsel, if known: (a) the Office of the United States Trustee; (b) counsel to the Debtor's prepetition lenders; (c) counsel to the Official Committee of Unsecured Creditors; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

24.     No prior request for the relief sought in this Motion has been made to this or any other court, except as set forth herein.

8

WHEREFORE, the Debtor request entry of an order, substantially in the form attached hereto, extending the Exclusivity Period for filing a plan through and including November 3, 2017, and through and including January 3, 2018, for obtaining acceptances of a plan, and for such other and further relief as this Court deems appropriate.

Dated: June 28, 2017

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Joseph M. Mulvihill*

Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Joseph M. Mulvihill (Bar No. 6061)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: ljones@pszjlaw.com
       dbertenthal@pszjlaw.com
       jmulvihill@pszjlaw.com

Counsel to the Debtor and Debtor in Possession