**THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE FOLLOWING CHAPTER 11 PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN PROVISIONALLY APPROVED BY THE BANKRUPTCY COURT.  A DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL, BUT HAS NOT BEEN APPROVED BY THE COURT.**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AEI WINDDOWN, INC.,[1]<br><br>     Debtor. | Chapter 11<br><br>Case No. 17-10500 (KJC) |

## DEBTOR'S PLAN OF LIQUIDATION
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Joseph M. Mulvihill (Bar No. 6061)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705 (Courier 19801)
Telephone:  302-652-4100
Facsimile:  302-652-4400
email: ljones@pszjlaw.com
   dbertenthal@pszjlaw.com
   jmulvihill@pszjlaw.com

Counsel for Debtor and Debtor in Possession

Dated:  October 19, 2017

---

[1]  The Debtor in this chapter 11 case and the last four digits of the Debtor's U.S. tax identification number is AEI Winddown, Inc. (f/k/a Aquion Energy, Inc.) (1370).  The Debtor's headquarters is located at AEI Winddown, Inc. (f/k/a Aquion Energy, Inc.), c/o Susan Roski, 1051 East Carey Street, Suite 602, Richmond, VA 23219.

# TABLE OF CONTENTS

**Page**

I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW..................................................................................................2

    A.    Rules of Interpretation, Computation of Time and Governing Law.............................. 2

    B.    Defined Terms ................................................................................................... 4

II. UNCLASSIFIED ADMINISTRATIVE CLAIMS, PROFESSIONAL FEES, AND PRIORITY TAX CLAIMS...........................................................................................21

    A.    Introduction...................................................................................................... 21

    B.    Administrative Claims ...................................................................................... 22

    C.    Professional Fee Claims.................................................................................... 23

    D.    Priority Tax Claims........................................................................................... 24

III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS ...............................................................................................................25

    A.    Summary .......................................................................................................... 25

    B.    Classification and Treatment of Claims against the Debtor .......................... 25

IV. ACCEPTANCE OR REJECTION OF THE PLAN..........................................................29

    A.    Voting Classes ................................................................................................. 29

    B.    Presumed Acceptance of Plan.......................................................................... 29

    C.    Acceptance by Impaired Classes ..................................................................... 29

    D.    Presumed Rejection of Plan ............................................................................. 29

    E.    Nonconsensual Confirmation........................................................................... 30

V. MEANS FOR IMPLEMENTATION OF THE PLAN.........................................................30

    A.    Dissolution of Debtor....................................................................................... 30

    B.    Appointment of the Liquidating Trustee.......................................................... 30

    C.    The Liquidating Trust ...................................................................................... 31

    D.    Rights and Powers of the Liquidating Trustee................................................. 33

    E.    Fees and Expenses of the Liquidating Trust .................................................... 34

    F.    Transfer of Beneficial Interests in the Liquidating Trust................................ 34

    G.    Available Cash ................................................................................................. 34

    H.    Litigation.......................................................................................................... 34

I.       Dissolution of Committee. ...................................................................... 35

J.       Full and Final Satisfaction. .................................................................... 36

K.      Distribution Procedures. ........................................................................ 36

L.       Liquidating Trust Assets Account. ......................................................... 38

M.      Resolution of Disputed Claims. ............................................................. 38

N.      Reserve Provisions for Disputed Claims. ............................................... 41

O.      Rounding. ............................................................................................... 42

P.       No Cash Payments of Less Than $50 on Account of Allowed Claims. ....... 43

Q.      Delivery of Distributions and Unclaimed Property. ................................ 43

R.      Withholding Taxes. ................................................................................ 45

S.       United States Trustee Fees. .................................................................... 45

T.       Books and Records. ............................................................................... 46

VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............... 46

A.      Rejection of Executory Contracts and Unexpired Leases ....................... 46

B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases .................. 47

C.      Insurance Policies ................................................................................. 47

VII. CONDITIONS PRECEDENT TO CONFIRMATION  OF THE PLAN AND TO THE
EFFECTIVE DATE ................................................................................................ 48

A.      Conditions to Confirmation of the Plan. ................................................ 48

B.      Effect of Failure of Conditions to Confirmation. ................................... 48

C.      Conditions to Effective Date. ................................................................. 49

D.      Effective Date. ....................................................................................... 49

VIII. EFFECTS OF CONFIRMATION ....................................................................... 49

A.      Binding Effect of Plan. .......................................................................... 49

B.      Vesting of Property of Debtor in the Liquidating Trust. ......................... 50

C.      Property Free and Clear. ....................................................................... 50

D.      Exculpation. .......................................................................................... 51

E.       Releases. ................................................................................................ 52

F.       Injunction. ............................................................................................. 55

G.      Post-Confirmation Liability of Liquidating Trustee. .............................. 56

H.      Preservation of Rights of Action. .......................................................... 57

I.       No Discharge. ........................................................................................ 60

IX. RETENTION OF JURISDICTION ................................................................................. 60

X. MISCELLANEOUS ..................................................................................................... 62

    A.     Revocation of Plan. ......................................................................................... 62

    B.     Severability of Plan Provisions. ...................................................................... 62

    C.     Exhibits. ........................................................................................................... 63

    D.     Notices. ............................................................................................................ 63

    E.     Reservation of Rights. ..................................................................................... 64

    F.     Defects, Omissions and Amendments. ........................................................... 64

    G.     Filing of Additional Documents. ..................................................................... 65

    H.     Successors and Assigns. ................................................................................... 65

    I.     Setoffs and Recoupments. ............................................................................... 65

    J.     Tax Exemption. ............................................................................................... 66

    K.     Securities Exemption ....................................................................................... 66

    L.     Implementation. .............................................................................................. 67

    M.     Record Date. .................................................................................................... 67

    N.     Certain Actions. ............................................................................................... 67

    O.     Substantial Consummation. ............................................................................. 68

    P.     Waiver of Fourteen-Day Stay. ........................................................................ 68

### Preliminary Statement

Pursuant to Chapter 11, Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, the above-captioned debtor and debtor in possession (the "Debtor") hereby proposes the following Plan of Liquidation.[2] Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtor's history, business, results of operations, the post-petition disposition of substantially all of the Debtors' assets, and a summary and analysis of the Plan. All Creditors entitled to vote on the Plan should read the Disclosure Statement and the Plan carefully—and consult with their counsel and other applicable professionals—before voting to accept or reject the Plan.

The Plan is a plan of liquidation which, among other things, provides for a Liquidating Trustee to liquidate or otherwise dispose of the Estate's remaining assets, if and to the extent such assets were not previously monetized to Cash or otherwise transferred by the Debtor prior to the Effective Date, and to distribute all net proceeds to creditors generally in accordance with the priority scheme under the Bankruptcy Code. The Plan proposes to vest all of the assets of the Debtor into a single Liquidating Trust for administration and distribution in accordance with the Plan and the Liquidating Trust Agreement.

With the Plan, Creditors entitled to vote will receive a Ballot for voting on the Plan, a Disclosure Statement that provides information concerning the Debtor and the Plan [and a letter from counsel for the Committee indicating the Committee's support of the Plan]. The Disclosure Statement includes a summary of the assets and liabilities of the Debtor, a summary of what

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in Article 1 of this Plan.

1

Creditors and Equity Interest Holders will receive under the Plan, a summary of the procedures

and voting requirements necessary for confirmation of the Plan, and a discussion of certain

alternatives to the Plan in the event that the Plan is not confirmed.

As more fully described in the Disclosure Statement, the Plan must be approved by the

requisite number of Creditors, and the Bankruptcy Court must find that the Plan meets the

applicable legal standards before it can be confirmed.[3]  If the Plan is not confirmed, the

Bankruptcy Court may order the Chapter 11 Case dismissed or converted to liquidating cases

under Chapter 7 of the Bankruptcy Code, or the Debtor or other parties in interest may propose a

different plan.

The Official Committee of Unsecured Creditors in this case supports the Plan.

## I.

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION

## OF TIME AND GOVERNING LAW

**A.**     **Rules of Interpretation, Computation of Time and Governing Law**

1.     For purposes of the Plan: (a) whenever from the context it is appropriate,

each term, whether stated in the singular or the plural, shall include both the singular and the

plural, and each pronoun, whether stated in the masculine, feminine, or neuter gender, shall

include the masculine, feminine, and the neuter gender; (b) any reference in the Plan to a

contract, instrument, release, indenture, or other agreement or document being in a particular

form or on particular terms and conditions means that such document shall be substantially in

---

[3]  Equity Interest Holders will receive nothing under the Plan, and therefore, the Class of Equity Interests is deemed to have rejected the Plan.  Accordingly, acceptances are not being solicited from the Holders of Equity Interests.

2

such form or substantially on such terms and conditions; (c) any reference in the Plan to an

existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may

have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all

references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and

Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereunder," and "hereto" and

similar terms refer to the Plan in its entirety rather than to a particular portion of the Plan;

(f) references to a part includes the whole, except where the context clearly requires otherwise;

(g) unless otherwise specified, "or" has the inclusive meaning represented by the phrase

"and/or"; (h) captions and headings to Articles and Sections are inserted for convenience of

reference only and are not intended to be a part of or to affect the interpretation of the Plan;

(i) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and

(j) any term used in capitalized form in the Plan that is not defined herein but that is used in the

Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the

Bankruptcy Code or the Bankruptcy Rules, as the case may be.

      2.     In computing any period of time prescribed or allowed by the Plan, the

provisions of Bankruptcy Rule 9006(a) shall apply.

      3.     Except to the extent that the Bankruptcy Code or Bankruptcy Rules are

applicable, and subject to the provisions of any contract, instrument, release, indenture, or other

agreement or document entered into in connection with the Plan, the rights and obligations

arising under the Plan shall be governed by, and construed and enforced in accordance with, the

laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

B.    **Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in the Plan:

1.    "Administrative Claim" means a Claim for an expense of administration of the Chapter 11 Case arising under Sections 503(b), 507(b), 503(b)(9) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate; (b) the value of any goods received by the Debtor within 20 days before the Petition Date to the extent that goods were sold to the Debtor in the ordinary course of the Debtor's business; (c) Professional Fee Claims; (d) all fees and charges assessed against the Estate under 28 U.S.C. §§ 1911-1930; (e) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court; (f) administrative claims that were timely filed prior to the Administrative Expense Bar Date; and (g) any Tax Claims incurred by the Debtor after the Petition Date or relating to a tax year or period which occurs after the Petition Date.

2.    "Allowed" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtor on its Schedules as other than disputed, contingent, or unliquidated and as to which Debtor, the Liquidating Trustee or other party in interest have not filed an objection on or before the Claims Objection Deadline; (b) a Claim that is set forth in a timely filed Proof of Claim as to which no objection has been filed and which is not otherwise a Disputed Claim; (c) a Claim that has been allowed by a Final Order; (d) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed

4

by the Debtor prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation of amount and nature of Claim executed by the Liquidating Trustee on or after the Effective Date; (iii) in any stipulation of amount and nature of any Administrative Claim, Priority Non-Tax Claim, or Priority Tax Claim executed by (y) the Debtor and approved by the Bankruptcy Court, or (z) the Liquidating Trustee; or (iv) in any contract, instrument, indenture or other agreement entered into or assumed by Debtor in connection with and in accordance with the Plan; (e) a Claim relating to a rejected executory contract or unexpired lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either case only if a Proof of Claim has been timely filed by the Claimant before the applicable rejection Bar Date for such claim or has otherwise been deemed timely filed under applicable law; or (f) a Claim that is allowed pursuant to the terms of this Plan.

3.      "Allowed Claim" or "Allowed … Claim" means a Claim that has been Allowed.

4.      "Available Cash" means the aggregate amount of all Cash held by the Debtor on the Effective Date.

5.      "Ballots" mean the ballots upon which the Holders of Impaired Claims shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions.

6.      "Bankruptcy Code" means title I of the Bankruptcy Reform Act of 1978, as amended from time to time, as set forth in Sections 101 *et seq.* of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

7.    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Case.

8.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the General and Local Rules of the Bankruptcy Court.

9.    "Bar Date" means, as applicable, the General Claims Bar Date, the First Administrative Expense Bar Date, Second Administrative Expense Bar Date or any other applicable deadline to file Claims referenced in the Plan.

10.    "Bar Date Order" means the *Order (I) Establishing Bar Dates for Filing Claims and (II) Approving the Form and Manner of Notice Thereof* [Docket No. 315], which established the General Claims Bar Date and First Administrative Expense Bar Date and certain other deadlines and procedures.

11.    "Beneficiaries" means holders of Allowed Claims entitled to receive Distributions from the Liquidating Trust under the Plan, whether or not such Claims were Allowed on the Effective Date.

12.    "Business Day" means any day, other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

13.    "Cash" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments, and legal tender of the United States of America or instrumentalities thereof.

6

14.    "Causes of Action" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims, including, without limitation, all claims and any avoidance, preference, recovery, subordination or other actions of the Debtor (unless the context expressly states that such Causes of Action belong to the another Entity) against Creditors, insiders, and/or any other Entities under the Bankruptcy Code, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Effective Date.

15.    "Chapter 11 Case" means the Chapter 11 case commenced when the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on the Petition Date and with the following case number:  17-10500 (KJC).

16.    "Claim" means a claim (as defined in Section 101(5) of the Bankruptcy Code) against the Debtor, including, but not limited to: (a) any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

17.    "Claimant" means the Holder of a Claim.

7

18.    "Claims Agent" means Kurtzman Carson Consultants LLC, which was appointed as the Debtor's claims, noticing, and balloting agent.

19.    "Claims Objection Deadline" means, with respect to all Claims other than Professional Fee Claims, (a) 180 days after the Effective Date, or (b) such other period as may be fixed by an order of the Bankruptcy Court for objecting to Claims upon request of the Liquidating Trustee.

20.    "Class" means a category of Holders of Claims or Equity Interests, as set forth in Article 3 of the Plan.

21.    "Committee" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Case.

22.    "Confirmation" means the entry of the Confirmation Order, subject to all conditions specified in Article 7 of the Plan having been (a) satisfied or (b) waived pursuant to Article 7.

23.    "Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

24.    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

25.    "Consummation" or "Consummate" means the occurrence of the Effective Date.

8

26.    "Contingent Claim" means any Claim for which a Proof of Claim has been filed with the Bankruptcy Court but was not filed in a sum certain and which Claim has not been estimated, fixed, or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date, or a Claim that has accrued but nonetheless remains dependent on the occurrence of a future event that may never occur.

27.    "Convenience Claim" means any Unsecured Claim (i) equal to or less than $5,000 or (ii) greater than $5,000 but, with respect to which, the Holder thereof voluntarily reduces the Unsecured Claim to $5,000 on the applicable Ballot, provided, however, that for purposes of the Plan and the Distributions to be made hereunder, the aggregate amount of Distributions to Convenience Claims shall be limited to $250,000.  To the extent that the amount of payment of Unsecured Claims electing to be treated as a Convenience Claim exceeds $250,000, the Claims permitted to elect such treatment shall be determined by reference to the amount of the Claim, with the Claim in the lowest amount being selected first and the next largest Claims being selected thereafter until the $250,000 cap is reached. Claims that are not selected for Convenience Class treatment shall be treated as Unsecured Claims.

28.    "Creditor" means any Holder of a Claim against the Debtor as specified in Section 101(10) of the Bankruptcy Code.

29.    "Debt" means liability on a Claim.

30.    "Debtor" means AEI Winddown, Inc. f/k/a Aquion Energy, Inc., debtor and debtor-in-possession in the Chapter 11 Case.

9

31.    "<u>Disallowed Claim</u>" means (i) a Claim, or any portion thereof, that has been disallowed by a Final Order or by other agreement of a Claimant; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, a Final Order, or other applicable law; or (iii) a Claim that has not been listed in the Schedules and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, a Final Order, or other applicable law.

32.    "<u>Disclosure Statement</u>" means the *Disclosure Statement with respect to Debtor' Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated October 13, 2017, as amended, supplemented, or modified from time to time, describing the Plan, which was prepared and distributed in accordance with the Bankruptcy Code and Bankruptcy Rules and other applicable law.

33.    "<u>Disputed</u>" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest: (a) listed on the Schedules as unliquidated, disputed, or contingent; (b) as to which the Debtor, the Liquidating Trustee, or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by the Debtor or the Liquidating Trustee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or (c) unless otherwise indicated in the Plan, a Claim as to which the period within which to object to such Claim has not yet expired.

10

34.    "Disputed Claim" means: (i) any Claim or portion of a Claim as to which

an objection to the allowance thereof has been interposed as of any deadline fixed under the Plan

or by order of the Bankruptcy Court, which objection has not been withdrawn or determined by

Final Order; (ii) any Claim scheduled by the Debtors in the Schedules as disputed, contingent, or

unliquidated; (iii) a Proof of Claim filed in a greater amount, or of a different nature or priority,

than the amount, nature, or priority listed for that Claim in the Schedules; or (iv) a Claim that is

not listed in the Schedules.  To the extent an objection relates to the allowance of only a part of a

Claim, such Claim shall be a Disputed Claim only to the extent of the objection.

35.    "Distributions" means the distributions of Cash to be made in accordance

with the Plan.

36.    "Distribution Dates" means collectively the Initial Distribution Date, any

Subsequent Distribution(s) Date, and the date of the Final Distribution.

37.    "Distribution Record Date" means the close of business on the Business

Day immediately preceding the Effective Date.

38.    "Effective Date" means the date selected by the Debtor which is a

Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in

effect, and (b) all conditions specified in Article 7 of the Plan have been satisfied, unless waived

by the Debtor. Within five (5) business days after the Effective Date, notice of the Effective Date

shall be filed with the Bankruptcy Court by the Liquidating Trustee.

39.    "Entity" means an entity as defined in Section 101(15) of the Bankruptcy

Code and, where applicable, the Committee.

11

40.    "Equity Interest" means any equity interest in the Debtor, including, but

not limited to, all issued, unissued, authorized, or outstanding shares or stock, whether vested or

non-vested, together with any warrants, options, or contract rights to purchase or acquire such

interests at any time.

41.    "Estate" means the estate of the Debtor in the Chapter 11 Case created

pursuant to Section 541 of the Bankruptcy Code upon the commencement of the Chapter 11

Case.

42.    "Final Decree" means the decree contemplated under Bankruptcy

Rule 3022.

43.    "Final Distribution" means the last payment to Holders of Allowed Claims

in accordance with the provisions of the Plan.

44.    "Final Order" means an order or judgment of the Bankruptcy Court or

other court of competent jurisdiction: (i) that has not been reversed, stayed, modified, or

amended; (ii) as to which the time to or the right to appeal or seek reconsideration, review,

rehearing, or certiorari has expired or been waived (without regard to whether the time to seek

relief from a judgment under Bankruptcy Rule 9024 has expired); and (iii) as to which no appeal

or petition for reconsideration, review, rehearing, or certiorari is pending.

45.    "First Administrative Expense Bar Date" means September 29, 2017 at

5:00 p.m. Eastern time, which is the deadline set pursuant to the Bar Date Order for filing

requests for Administrative Claims arising on or after the Petition Date through and including

August 1, 2017, or any claim under section 503(b)(9) of the Bankruptcy Code for the value of

12

any goods received by the Debtor within twenty (20) days before the Petition Date to the extent that goods were sold to the Debtor in the ordinary course of the Debtor's business.

46.    "General Claims Bar Date" means September 29, 2017, at 5:00 p.m. Eastern Time, which is the general deadline set pursuant to the Bar Date Order for filing proofs of claim for any Claims against the Debtor that arose prior to the Petition Date.

47.    "Governmental Unit" means the United States; State; Commonwealth, District, Territory, municipality, foreign state, department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under Chapter 11), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

48.    "Holder" means an Entity holding a Claim or Equity Interest.

49.    "Impaired" means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

50.    "Initial Distribution Date" means the Effective Date, or as soon as practicable thereafter when the initial distribution shall be made to the Holders of Allowed Claims, as determined by the Liquidating Trustee in its reasonable discretion.

51.    "Insider" means an insider of the Debtor, as defined in Section 101(31) of the Bankruptcy Code.

52.    "Insurance Policies" means all insurance policies maintained by the Debtor as of the Petition Date.

13

53.     "Interim Fee Order" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 120], entered by the Bankruptcy Court on April 25, 2017.

54.     "Lien" means any charge against or interest in property (including, but not limited to, any mortgage, lien, pledge, charge, security interest, encumbrance, or other security device of any kind) to secure payment of a debt or performance of an obligation.

55.     "Liquidation Proceeds" means any Cash or other consideration paid to or realized by the Debtor or the Liquidating Trustee, as applicable, upon the sale, transfer, assignment, or other disposition of the Liquidating Trust Assets.

56.     "Liquidating Trust" means the grantor trust to be created upon the Effective Date for the benefit of the Trust Beneficiaries.

57.     "Liquidating Trust Agreement" means the agreement, substantially in the form included in the Plan Supplement governing the Liquidating Trust, as it may be subsequently modified from time to time.

58.     "Liquidating Trust Assets" means the assets held in the Liquidating Trust comprised of (i) Cash; (ii) all Causes of Action the Debtor holds or may hold against any Entity; (iii) all Claims and rights of the Debtor under any Insurance Policies; and (iv) any and all other assets, interests, rights, claims and defenses of the Debtor or Estate, including, without limitation, all rights under any order of the Bankruptcy Court.

59.     "Liquidating Trust Assets Account" means an interest-bearing bank account or money-market account to be established and held in trust by the Liquidating Trustee

14

on or after the Effective Date for the purpose of holding the Liquidating Trust Assets and Trust Proceeds to be distributed under the Plan and any interest, dividends, or other income earned upon the investment of the Liquidating Trust Assets. The Liquidating Trust Assets Account will be initially funded by the Debtor or Liquidating Trustee, as applicable, on or immediately after the Effective Date with the Available Cash.

60.    "Liquidating Trust Interests" means the non-transferable interests in the Liquidation Trust, distributions of which will be made to Holders of Allowed Secured Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Unsecured Claims in accordance with Article V hereof.

61.    "Liquidating Trustee" means the Person appointed by the Debtor, after consultation with the Committee, to act as trustee of the Liquidating Trust in accordance with the terms of the Plan, the Confirmation Order, and the Liquidating Trust Agreement, or such successor appointed as the trustee in accordance with the Liquidating Trust Agreement.

62.    "Litigation" means the interest of the Estate, the Debtor, or the Liquidating Trust, as applicable, in any and all claims, rights, and Causes of Action that have been or may be commenced by the Debtor or the Liquidating Trust, as applicable. Litigation includes, without limitation, any action: (i) to avoid and recover any transfers of property determined to be preferential, fraudulent, or avoidable pursuant to Sections 544, 545, 547, 548, 549(a), and 550 of the Bankruptcy Code, to the extent not sold or released as part of the Sale Agreement; (ii) for the turnover of property to the Debtor or the Liquidating Trust, as applicable; (iii) for the recovery of property or payment of money that belongs to or can be asserted by the

15

Debtor or the Liquidating Trust, as applicable; (iv) for compensation for damages incurred by the Debtor; and (v) equitable subordination actions against Creditors.

63.     "Litigation Recovery" means any Cash or other property received by the Debtor or the Liquidating Trust, as applicable, from all or any portion of the Litigation, including, but not limited to, awards of damages, attorneys' fees and expenses, interest, and punitive damages, whether recovered by way of settlement, execution on judgment, or otherwise. If any Litigation is pursued on a contingent-fee basis, the Litigation Recovery will be net of any contingent fee paid to legal counsel.

64.     "Person" means any individual, corporation, limited liability company, general partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, Governmental Unit, or other Entity.

65.     "Petition Date" means March 8, 2017, the date on which the Debtor filed a voluntary petition for relief commencing the Chapter 11 Case.

66.     "Plan" means this Plan of Liquidation, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Plan, the Bankruptcy Code, and the Bankruptcy Rules, including, without limitation, any exhibits and schedules hereto, either in its present form or as the same may be amended, modified, or supplemented from time to time in accordance with the terms and provisions hereof.

67.     "Plan Documents" means the Plan, the Disclosure Statement, the Plan Supplement, Liquidating Trust Agreement, any plan support letters, or other documents or pleadings filed by the Debtor relating to the Plan.

16

68.    "Plan Objection Deadline" means the deadline established by the Bankruptcy Court for filing and serving objections to Confirmation of the Plan.

69.    "Plan Supplement" means the pleading or pleadings identified in the Plan or Disclosure Statement for filing with the Bankruptcy Court not later than ten (10) calendar days prior to the Plan Objection Deadline, which shall include certain exhibits and schedules to this Plan, as well as documents, agreements, and instruments evidencing and effectuating the Plan.

70.    "Priority Non-Tax Claim" means any Claim, other than an Administrative Claim or a Priority Tax Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

71.    "Priority Tax Claim" means a Claim of a Governmental Unit of the kind specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

72.    "Pro Rata" means proportionately so that, with respect to a Claim, the ratio of: (a) (i) the amount of property distributed on account of a particular Claim to (ii) the Allowed amount of the Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims in the Class or Classes entitled to share in the applicable distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

73.    "Professional" means an Entity:  (a) employed pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330, and 331 of

17

the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the

Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

74.    "Professional Fee Claim" means those fees and expenses claimed by

Professionals pursuant to Sections 330, 331, or 503 of the Bankruptcy Code, and accrued and

unpaid as of the Effective Date.

75.    "Professional Fee Reserve" means a reserve fund established by the

Liquidating Trustee to pay (a) Professional Fee Claims approved by the Bankruptcy Court after

the Effective Date and (b) any unpaid fees and expenses of the Chief Restructuring Officer and

other personnel from Protiviti serving as restructuring advisors due to be paid under the terms of

Protiviti's retention order.

76.    "Proof of Claim" means a proof of claim filed pursuant to Section 501 of

the Bankruptcy Code or any order of the Bankruptcy Court, together with supporting documents.

77.    "Rejection Bar Date" means the last date for any Entity whose claims

arise out of the Bankruptcy Court approved rejection of an executory contract or unexpired lease

to file a proof of claim for damages related to such rejection.  The Rejection Bar Date for any

such Claim will be the later of (a) the General Bar Date; (b) for executory contracts and

unexpired leases rejected pursuant to a rejection motion, twenty-one (21) days after the later of

(i) the date of service of an order approving a rejection motion, (ii) the date of the surrender of

the leased property to the affected lessor, or (iii) any alternative date provided by an order

approving the rejection; (c) for Claims arising from the rejection of executory contracts or

unexpired leases pursuant to Confirmation of the Plan, thirty (30) days after the earlier of the

Effective Date or any other order of the Bankruptcy Court approving such rejection; and (d) any

other date set by an order of the Court.

78.    "Released Parties" means, collectively, (a) the Debtor, (b) the Debtor's

post-petition officers (including the Chief Restructuring Officer), directors and managers; (c) the

Committee and the individual members thereof in their capacity as such, and (d) each of such

Entities' respective successors and assigns, and respective current and former shareholders,

affiliates, subsidiaries, principals, employees, agents, officers, directors, managers, trustees,

partners, members, professionals, representatives, advisors, attorneys, financial advisors,

accountants, and consultants.

79.    "Schedules" means the schedules of assets and liabilities as the

Bankruptcy Court required the Debtor to file pursuant to Section 521 of the Bankruptcy Code,

the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and

supplemented from time to time, and the Debtor's statements of financial affairs filed with the

Bankruptcy Court, as the Bankruptcy Court required the Debtor to file pursuant to Section 521 of

the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be

amended and supplemented from time to time.

80.    "Second Administrative Expense Bar Date" means the applicable last

date, at 5:00 p.m. Eastern time, set by the Bankruptcy Court for a Claimant to file a request for

payment of any Administrative Claim (excluding Professional Fee Claims) arising on or after

August 2, 2017 through and including the Effective Date, other than for Administrative Claims

related to the rejection of executory contracts and unexpired leases subject to a Bar Date

DOCS_DE:215514.3

previously set by order of the Bankruptcy Court.  The Second Administrative Expense Bar Date

shall be sixty (60) days after the Effective Date.

81.    "Secured Claim" means any Claim that is secured in whole or part, as of

the Petition Date, by a Lien which is valid, perfected, and enforceable under applicable law and

is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or

subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of such

Lien or right of setoff as determined under Sections 506(a) or 1129(b) of the Bankruptcy Code,

as applicable.

82.    "Subsequent Distribution Date" means any date after the Initial

Distribution Date upon which the Liquidating Trust makes a distribution to any Holders of

Allowed Administrative, Secured, Priority, or Unsecured Claims.

83.    "Tax" means any tax, charge, fee, levy, impost, or other assessment by

any federal, state, local, or foreign taxing authority, including, without limitation, income,

excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, *ad valorem*,

estimated, severance, stamp, occupation, and withholding tax.  "Tax" shall include any interest

or additions attributable to, imposed on, or with respect to such assessments.

84.    "Tax Claim" means all or that portion of an Allowed Claim held by a

Governmental Unit for a Tax assessed or assessable against the Debtor.

85.    "Trust Proceeds" means the aggregate amount of Cash or other funds of

the Debtor available for payment of the Allowed Claims of Creditors who are beneficiaries of the

Liquidating Trust, including, without limitation, Available Cash of the Liquidating Trust and any proceeds of Liquidating Trust Assets.

86.    "Unimpaired Claim" means an unimpaired Claim within the meaning of Section 1124 of the Bankruptcy Code.

87.    "Unsecured Claim" means any Claim against the Debtor or Estate that is not a Secured Claim, Administrative Claim, Priority Tax Claim or Priority Non-Tax Claim.

88.    "U. S. Trustee" means the Office of the United States Trustee for the District of Delaware.

89.    "Voting Instructions" means the instructions for voting on the Plan contained in Article 1 of the Disclosure Statement and in the Ballots.

90.    "Voting Record Date" means the date as of which the identity of Holders of Claims is set for purposes of determining the Entities entitled to receive and vote on the Plan.

## II.

## UNCLASSIFIED ADMINISTRATIVE CLAIMS, PROFESSIONAL FEES,

## AND PRIORITY TAX CLAIMS

A.    **Introduction**

Certain types of Claims are not placed into voting Classes; instead they are unclassified. They are not considered Impaired and they do not vote on the Plan because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has not placed the following Claims in a Class:

B.    **Administrative Claims**

Except to the extent that a Holder of an Allowed Administrative Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Claim, other than a Professional Fee Claim, shall receive, without interest, Cash equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements between the Holder of such Claim and the Debtor or the Liquidating Trustee, as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtor's business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtor's business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law.

Holders of Administrative Claims (including, without limitation, Professionals requesting compensation or reimbursement of such expenses pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code) that do not file such requests by the applicable deadline provided for herein may be subject to objection for untimeliness and may be prohibited by order of the Bankruptcy Court from asserting such claims against the Debtor, the Estate, the Liquidating Trust, or their successors or assigns, or their property.  Any objection to Professional Fee Claims shall be filed on or before the objection deadline specified in the application for final compensation or order of the Bankruptcy Court.

Notwithstanding any provision in the Plan regarding payment of Administrative Claims to the contrary, and without waiver of any argument available that such Claim is already time-barred by prior orders of the Bankruptcy Court, all Administrative Claims that are required to be filed and not filed by, as applicable, the First Administrative Expense Bar Date, Second Administrative Expense Bar Date or any other Rejection Bar Date established by order of the Bankruptcy Court, shall be deemed disallowed and discharged. Without limiting the foregoing, all fees due and payable under 28 U.S.C. § 1930 that have not been paid shall be paid on or before the Effective Date.

## C.    **Professional Fee Claims**

Professionals requesting compensation or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code or required to file fee applications by order of the Bankruptcy Court for services rendered prior to the Effective Date must file and serve pursuant to the notice provisions of the Interim Fee Order, an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court. For avoidance of doubt, the Liquidating Trustee is not authorized under the Plan to object to applications for final allowance of compensation and reimbursement of expenses.

At the Effective Date, the Liquidating Trustee shall establish an appropriate Professional Fee Reserve based upon estimates of anticipated fees provided by Professionals. The

DOCS_DE:215514.3

Liquidating Trustee shall have the authority to supplement the Professional Fee Reserve if the amount originally established is insufficient to pay Allowed Professional Fee Claims.

Upon approval of the fee applications by the Bankruptcy Court, the Liquidating Trustee shall pay Professionals all of their respective accrued and Allowed fees and reimbursement of expenses arising prior to the Effective Date, plus reasonable fees for services rendered, and actual and necessary costs incurred, in connection with the filing, service and prosecution of any applications for allowance of Professional Fees pending on the Effective Date or filed and/or served after the Effective Date, plus post-Effective Date fees approved by the Liquidating Trustee.

**D.    Priority Tax Claims**

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Priority Tax Claim, the Liquidating Trust shall pay each holder of an Allowed Priority Tax Claim the full unpaid amount of such Allowed Priority Tax Claim on the earliest of the following dates:  (i) on or as soon as practicable after the Effective Date, (ii) on or as soon as practicable after the date such Allowed Priority Tax Claim becomes an Allowed Claim, and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law.

24

## III.

## CLASSIFICATION AND TREATMENT OF

## CLASSIFIED CLAIMS AND EQUITY INTERESTS

**A.**    **Summary**

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation, and Distribution (if any) pursuant to the Plan and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

**B.**    **Classification and Treatment of Claims against the Debtor**

The classification of Claims and Equity Interests against the Debtor pursuant to the Plan is as follows:

| Class | Status | Voting Rights |
| --- | --- | --- |
| Class 1 – Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 2 – Secured Claims | Unimpaired | Not Entitled to Vote |
| Class 3 – Convenience Claims | Impaired | Entitled to Vote |
| Class 4 – Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 – Equity Interests | Impaired | Not Entitled to Vote |

25

1.     Class 1 – Priority Non-Tax Claims

      a.     **Classification:**  Class 1 consists of Priority Non-Tax Claims.

      b.     **Treatment:**  The Liquidating Trustee shall pay the Allowed amount of each Priority Non-Tax Claim to each Entity holding a Priority Non-Tax Claim as soon as practicable following the later of: (a) the Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim (or as otherwise permitted by law).  The Liquidating Trustee shall pay each Entity holding a Priority Non-Tax Claim in Cash in full in respect of such Allowed Claim without interest from the Petition Date; *provided, however*, that such Entity may be treated on such less favorable terms as may be agreed to in writing by such Entity.

      c.     **Voting:**  Class 1 is not an Impaired Class and Holders of Priority Non-Tax Claims are not entitled to vote on the Plan.

2.     Class 2 – Secured Claims

      a.     **Classification:**  Class 2 consists of Secured Claims.  For purposes of distributions under the Plan, each Holder of a Secured Claim in Class 2 is considered to be in its own separate subclass within Class 2 (*i.e.*, Class 2A, Class 2B, *etc.*), and each such subclass is deemed to be a separate Class for purposes of the Plan.

      b.     **Treatment:**  Except to the extent previously paid in full, to the extent any Secured Claims exist, at the option of the Debtor or the Liquidating Trustee, as applicable, one of the following treatments shall be provided: (i) the Holder of such Claim shall retain its Lien on its collateral until such collateral is sold, and the proceeds of such sale, less costs and expenses of disposing of such collateral, shall be paid to such Holder in full

26

satisfaction, release, and discharge of such Allowed Secured Claim; (ii) on or as soon as

practicable after the later of (a) the Effective Date, or (b) the date upon which the Bankruptcy

Court enters a Final Order determining or allowing such Claim, or as otherwise agreed between

the Holder of such Claim and the Debtor or the Liquidating Trustee, as applicable, the Holder of

such Secured Claim will receive a Cash payment equal to the amount of its Allowed Secured

Claim in full satisfaction, release, and discharge of such Secured Claim; or (iii) the collateral

securing the Creditor's Secured Claim shall be abandoned to such Creditor, in full satisfaction,

release, and discharge of such Secured Claim.

       **c.**    **Voting:**  Class 2 is not an Impaired Class, and Holders of Secured

Claims are not entitled to vote on the Plan.

      3.    Class 3 – Convenience Claims

       **a.**    **Classification:**  Class 3 consists of Claims of Holders of

Convenience Claims.

       **b.**    **Treatment:**  On or as soon as practicable after the Effective Date,

each Holder of an Allowed Convenience Claim shall receive, in full and final satisfaction of its

Claim, Cash equal to 50% of the Allowed amount of such Claim, as calculated without interest

from the Petition Date, and no such Holder will be entitled to any future distribution from the

Liquidating Trust.

       **c.**    **Voting:**  Class 3 is an Impaired Class and Holders of Claims are

entitled to vote to accept or reject the Plan.

DOCS_DE:215514.3

4.      Class 4 – Unsecured Claims

a.      **Classification:**  Class 4 consists of Unsecured Claims.

b.      **Treatment:**  Each Holder of an Allowed Unsecured Claim in Class 3 shall receive a Pro Rata share of the Liquidating Trust Interests in exchange for their Allowed Claims following the payment or reserve for Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Convenience Claims and Secured Claims.  Unsecured Claims are subject to all statutory, equitable, and contractual subordination claims, rights, and grounds available to the Debtor, the Estate, and pursuant to this Plan, the Liquidating Trustee, which subordination claims, rights, and grounds are fully enforceable prior to, on, and after the Effective Date.

c.      **Voting:**  Class 4 is an Impaired Class and Holders of Claims are entitled to vote to accept or reject the Plan.

5.      Class 5 – Equity Interests

a.      **Classification:**  Class 5 consists of all Equity Interests in the Debtor.

b.      **Treatment:**  There shall be no Distribution on account of Class 5 Equity Interests.  Upon the Effective Date, the Equity Interests will be deemed cancelled and will cease to exist.

c.      **Voting:**  Holders of Equity Interests will receive no distribution under the Plan and therefore are deemed to have rejected the Plan.  Accordingly, Holders of Equity Interests are not entitled to vote.

28

# IV.

## ACCEPTANCE OR REJECTION OF THE PLAN

**A.    Voting Classes**

Each Holder of an Allowed Claim in Class 3 is entitled to vote either to accept or to reject the Plan.  Only those votes cast by Holders of Allowed Claims shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain Confirmation.

**B.    Presumed Acceptance of Plan**

The Holders of Claims in Class 1 and Class 2 are unimpaired under the Plan and are therefore deemed to accept the Plan.

**C.    Acceptance by Impaired Classes**

Class 3 and Class 4 shall have accepted the Plan if: (a) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (b) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

**D.    Presumed Rejection of Plan**

The Holders of Class 4 Equity Interests shall not receive any distributions under the Plan and are therefore deemed to reject the Plan and are not entitled to vote.

DOCS_DE:215514.3

E.      **Nonconsensual Confirmation**

Because Class 4 is deemed to reject the Plan by operation of law, the Debtor will request

the Bankruptcy Court to confirm the Plan in accordance with Section 1129(b) of the Bankruptcy

Code.  Without limiting the foregoing, in the event that any Class of Claims entitled to vote on

the Plan fails to accept the Plan as required by Section 1129(a) of the Bankruptcy Code, the Plan

may be amended and, in any event, as applicable, the Debtor reserves the right to seek

confirmation of the Plan over such rejection pursuant to Section 1129(b) of the Bankruptcy

Code.

**V.**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.      **Dissolution of Debtor**

From and after the Effective Date, the Debtor shall be dissolved, without any further

action required on the part of the Debtor or the Debtor's officers, directors, interestholders,

and/or any other parties; provided, however, the Liquidating Trustee in his or her discretion shall

be authorized to take any and all actions necessary or desirable in relation to dissolution of the

Debtor.  On the Effective Date, the employment, retention, appointment and authority of all

officers, directors, employees and professionals of the Debtor shall be deemed to terminate.

B.      **Appointment of the Liquidating Trustee**

The Debtor, after consultation with the Committee, will appoint the Liquidating Trustee

prior to the filing of the Plan Supplement and the identity of the Liquidating Trustee will be

disclosed in the Plan Supplement.  From and after the Effective Date, professionals may be

30

retained by the Liquidating Trustee without further need for documentation or Bankruptcy Court

approval.  All fees and expenses incurred by the professionals retained by the Liquidating

Trustee following the Effective Date shall be paid by the Liquidating Trust from the Liquidating

Trust Assets (after payment in full of all Allowed Administrative Claims) in accordance with the

Liquidating Trust Agreement.

## C.    The Liquidating Trust

### 1.    Formation of the Liquidating Trust

On the Effective Date, the Liquidating Trust shall be established pursuant to the

Liquidating Trust Agreement for the purpose of, *inter alia*, (a) administering the Liquidating

Trust Assets, (b) prosecuting and/or resolving all Disputed Claims, (c) investigating and pursuing

any Causes of Action the Debtor holds or may hold against any Entity, and (d) making all

Distributions to the Beneficiaries provided for under the Plan. The Liquidating Trust is intended

to qualify as a liquidating trust pursuant to Treas. Reg. § 301.7701-4(d), with no objective to

continue or engage in the conduct of the trade or business, except to the extent reasonably

necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.  Accordingly,

the Liquidating Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash

the Liquidating Trust Assets, and make timely Distributions to the Beneficiaries, and not unduly

prolong the duration of the Liquidating Trust.  Neither the Liquidating Trust nor the Liquidating

Trustee shall be or shall be deemed a successor-in-interest of the Debtor for any purpose other

than as specifically set forth herein or in the Liquidating Trust Agreement.

31

2.      Funding of the Liquidating Trust

On the Effective Date, the Liquidating Trust Assets shall vest automatically in the

Liquidating Trust.  The Plan shall be considered a motion pursuant to Sections 105, 363 and 365

of the Bankruptcy Code for such relief.  The transfer of the Liquidating Trust Assets to the

Liquidating Trust shall be made for the benefit and on behalf of the Beneficiaries. The assets

comprising the Liquidating Trust Assets will be treated for tax purposes as being transferred by

the Debtor to the Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and

then by the Beneficiaries to the Liquidating Trust in exchange for the beneficial interests in the

Liquidating Trust. The Beneficiaries shall be treated as the grantors and owners of the

Liquidating Trust. Upon the transfer of the Liquidating Trust Assets, the Liquidating Trust shall

succeed to all of the Debtor's rights, title and interest in the Liquidating Trust Assets, and the

Debtor will have no further interest in or with respect to the Liquidating Trust Assets.

Except to the extent definitive guidance from the IRS or a court of competent jurisdiction

(including the issuance of applicable Treasury Regulations or the receipt by the Liquidating

Trustee of a private letter ruling if the Liquidating Trustee so requests one) indicates that such

valuation is not necessary to maintain the treatment of the Liquidating Trust as a liquidating trust

for purposes of the Internal Revenue Code and applicable Treasury Regulations, as soon as

possible after the Effective Date, the Liquidating Trustee shall make a good-faith valuation of the

Liquidation Trust Assets.  The valuation shall be used consistently by all parties (including,

without limitation, the Debtor, the Liquidating Trust, the Beneficiaries) for all federal income tax

purposes.

D.    **Rights and Powers of the Liquidating Trustee**

The Liquidating Trustee shall be deemed the Estate's representative in accordance with

Section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the

Liquidating Trust Agreement, including, without limitation, the powers of a trustee under

Sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules to act on

behalf of the Liquidating Trust.  Without limiting the foregoing, the Liquidating Trustee will

have the right to, among other things, (1) effect all actions and execute all agreements,

instruments and other documents necessary to implement the provisions of the Plan and the

Liquidating Trust Agreement; (2) liquidate the Liquidating Trust Assets; (3) investigate,

prosecute, settle, abandon or compromise any Causes of Action the Debtor holds or may hold

against any Entity; (4) make Distributions as contemplated hereby, (5) establish and administer

any necessary reserves for Disputed Claims that may be required; (6) object to the Disputed

Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the

Bankruptcy Court such objections; (7) assert or waive any attorney-client privilege on behalf of

the Debtor and Estate with regard to acts or events during time periods prior to the Petition Date;

and (8) employ and compensate professionals and other agents, including, without limitation,

existing Professionals employed by the Debtor or the Committee in accordance with the

Liquidating Trust Agreement or the Plan, *provided*, *however*, that any such compensation shall

be made only out of the Liquidating Trust Assets, to the extent not inconsistent with the status of

the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for

federal income tax purposes.

33

E.    **Fees and Expenses of the Liquidating Trust**

Subject to payment in full of all Allowed Administrative Claims, and except as otherwise ordered by the Bankruptcy Court, expenses incurred by the Liquidating Trust on or after the Effective Date shall be paid in accordance with the Liquidating Trust Agreement without further order of the Bankruptcy Court.

F.    **Transfer of Beneficial Interests in the Liquidating Trust**

Liquidating Trust Interests shall not be transferable except upon death of the interest holder or by operation of law. The Liquidating Trust shall not have any obligation to recognize any transfer of Claims or Equity Interests occurring after the Distribution Record Date.

G.    **Available Cash**

On or as soon as practicable following the Effective Date, the Liquidating Trust Assets Account shall be opened by the Liquidating Trustee and funded with the Available Cash to the extent of any unencumbered Cash, which funds shall constitute Liquidating Trust Assets. Thereafter, from time to time, upon receipt of any Liquidation Proceeds or any Litigation Recovery, the Liquidating Trustee shall deposit such funds into the Liquidating Trust Assets Account, and they shall become part of the Liquidating Trust Assets.

H.    **Litigation.**

Except as otherwise provided in this Plan, all Litigation is retained, vested in the Liquidating Trust, and preserved pursuant to Section 1123(b) of the Bankruptcy Code.  From and after the Effective Date, all Litigation will be prosecuted or settled by the Liquidating Trustee. To the extent any Litigation is already pending on the Effective Date, the Liquidating Trustee, as

34

successor to the Debtor or the Committee (in any derivative capacity or as an intervening party), will continue the prosecution of such Litigation and shall be substituted as plaintiff, defendant, or in any other capacity for the Debtor or the Committee pursuant to this Plan and the Confirmation Order on the Effective Date without need for any further motion practice or notice in any case, action, or matter.

I.    **Dissolution of Committee.**

On the Effective Date, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have any role arising from or relating to the Chapter 11 Case, except in connection with final fee applications of Professionals for services rendered prior to the Effective Date (including the right to object thereto). The Professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for any services rendered to the Committee or expenses incurred in the service of the Committee after the Effective Date, except for reasonable fees for services rendered, and actual and necessary costs incurred, in connection with any applications for allowance of Professional Fees pending on the Effective Date or filed and served after the Effective Date pursuant to Section 2(C) of the Plan. Nothing in the Plan shall prohibit or limit the ability of the Debtor's or Committee's Professionals to represent the Liquidating Trustee or to be compensated or reimbursed per the Plan and the Liquidating Trust Agreement in connection with such representation.

DOCS_DE:215514.3

**J.**    **Full and Final Satisfaction.**

Commencing upon the Effective Date, subject to the terms of this Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall be authorized and directed to distribute the amounts required under the Plan to the Holders of Allowed Claims according to the provisions of the Plan.  Upon the Effective Date, all Debts of the Debtor shall be deemed fixed and adjusted pursuant to this Plan, and the Liquidating Trust shall have no liability on account of any Claims or Equity Interests except as set forth in this Plan and in the Liquidating Trust Agreement.  All payments and all distributions made by the Liquidating Trustee under the Plan shall be in full and final satisfaction, settlement, and release of all Claims against the Liquidating Trust; *provided, however,* that nothing contained in this Section V of the Plan, or in any other provision of this Plan, shall be deemed to constitute or result in a discharge of the Debtor under Bankruptcy Code Section 1141(d).

**K.**    **Distribution Procedures.**

1.    Distribution Dates.  The Liquidating Trustee shall make Distributions to Holders of Claims as provided in Article III of the Plan.  Subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee may, in its sole discretion, make a full or partial Pro Rata Distribution to the Holders of Class 3 Unsecured Claims on the Initial Distribution Date or a Subsequent Distribution Date.

2.    Subsequent Distributions.  Any Distribution not made on the Initial Distribution Date or a Subsequent Distribution Date because the Claim relating to such Distribution had not been Allowed on that Distribution Date shall be held by the Liquidating Trust for Distribution on

36

any Subsequent Distribution Date after such Claim is Allowed.  No interest shall accrue or be paid on the unpaid amount of any Distribution.

3.    Distribution Record Date.  Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the Holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date.  The Liquidating Trustee shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date.  In making any Distribution with respect to any Claim, the Liquidating Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of claim filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that is known to the Liquidating Trustee as of the Distribution Record Date.

4.    Manner of Cash Payments Under the Plan or Liquidating Trust Agreement.  Cash payments made pursuant to the Plan or Liquidating Trust Agreement shall be in United States dollars by checks drawn on a domestic bank selected by the Liquidating Trustee or by wire transfer from a domestic bank, at the option of the Liquidating Trustee.

5.    Time Bar to Cash Payments by Check.  Checks issued by the Liquidating Trustee on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof.  Requests for the reissuance of any check that becomes null and void

pursuant to this Article shall be made directly to the Liquidating Trustee by the Holder of the Allowed Claim to which the check was originally issued. Any Claim in respect of such voided check shall be made in writing on or before the later of six months from the Effective Date or 90 days after the date of issuance thereof. After that date, all Claims in respect of voided checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become the property of the Liquidating Trust as unclaimed property in accordance with Section 347(b) of the Bankruptcy Code.

L.      **Liquidating Trust Assets Account.**

Unless otherwise provided in the Confirmation Order, the Liquidating Trust Assets Account shall be invested by the Liquidating Trustee in a manner consistent with the objectives of Section 345(a) of the Bankruptcy Code and in its reasonable and prudent exercise of discretion. The Liquidating Trustee shall have no obligation or liability to Beneficiaries in connection with such investments in the event of any unforeseeable insolvency of any financial institution where such funds are held.

M.      **Resolution of Disputed Claims.**

1.      No Distribution Pending Allowance. Notwithstanding any other provision of the Plan, the Liquidating Trustee shall not Distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed. Nothing contained herein, however, shall be construed to prohibit or require payment or Distribution on account of any undisputed portion of a Claim.

38

2.    Resolution of Disputed Claims.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Liquidating Trustee shall have the right to make, file, prosecute, settle, withdraw, or resolve objections to Claims.  The costs of pursuing the objections to Claims shall be borne by the Liquidating Trust.  From and after the Confirmation Date, all objections with respect to Disputed Claims shall be litigated to a Final Order except to the extent, the Liquidating Trustee elects to withdraw any such objection or the Liquidating Trustee and the Claimant elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim or Disputed Equity Interest without approval of the Bankruptcy Court.

3.    Objection Deadline.  All objections to Disputed Claims shall be filed and served upon the Claimant not later than the Claims Objection Deadline, as such may be extended by order of the Bankruptcy Court.  If and when the Liquidating Trustee ever determines that there is likely to be remaining Liquidation Proceeds realized by the Liquidating Trust after the payment in full of all Liquidating Trust expenses, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Secured Claims, and Allowed Unsecured Claims, with interest accrued from and after the Petition Date, the Liquidating Trustee will file a notice to this effect with the Bankruptcy Court.

4.    Estimation of Claims.  At any time, (a) prior to the Effective Date, the Debtor, and (b) after the Effective Date, the Liquidating Trustee, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by Section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Liquidating Trust has previously

DOCS_DE:215514.3

objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the

Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during Litigation

concerning any objection to such Claim, including during the pendency of any appeal relating to

any such objection.  If the Bankruptcy Court estimates any contingent or unliquidated Claim, that

estimated amount shall constitute either the Allowed amount of such Claim or a maximum

limitation on the Claim, as determined by the Bankruptcy Court.  If the estimated amount

constitutes a maximum limitation on the Claim, the Debtor or the Liquidating Trust, as

applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of

the Claim.  All of the aforementioned Claims objection, estimation, and resolution procedures

are cumulative and not exclusive of one another.  Claims may be estimated and subsequently

compromised, settled, withdraw, or resolved by any mechanism of the Bankruptcy Court.

5.      Disallowance of Claims.

(a)      Except as otherwise agreed, any and all proofs of claim filed after the Bar

Date shall be deemed disallowed as of the Effective Date without any further notice or action,

order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any

Distributions on account of such Claims, unless on or before the Confirmation Date the

Bankruptcy Court has entered an order deeming such Claim to be timely filed; *provided,*

*however*, that such Claims shall be deemed Allowed (unless Disputed) after the payment in full

of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Claims,

Allowed Priority Non-Tax Claims, and all Allowed Unsecured Claims.

40

(b)     Any Claims held by Entities from which property is recoverable under Sections 542, 543, 550, or 553 of the Bankruptcy Code or Entities that are transferees of transfers avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, provided that such Cause of Action is retained by the Liquidating Trust, shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action the Debtor holds or may hold against any Entity have been resolved or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Estate by that Entity have been turned over or paid to the Debtor or Liquidating Trust.

6.     Adjustment Without Objection.  Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register at the direction of the Debtor or the Liquidating Trustee, as applicable, without an objection filed and without further notice to or action, order, or approval of the Bankruptcy Court.

**N.     Reserve Provisions for Disputed Claims.**

1.     Establishment of Disputed Reserves.  On or an Distribution Date, the Liquidating Trustee shall reserve Cash required for distribution on Disputed Claims as if such Claims were Allowed as filed with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Liquidating Trustee (the "Disputed Claim Reserve"). On each Distribution date after the Effective Date in which the Liquidating Trustee makes Distributions to Holders of Allowed Claims, the Liquidating Trustee shall retain on account of

41

Disputed Claims an amount the Liquidating Trustee estimates is necessary to fund the Pro Rata

Share of such Distributions to Holders of Disputed Claims if such Claims were Allowed, with

any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably

determined by the Liquidating Trustee.

2.      Maintenance of Disputed Claim Reserves.  The Liquidating Trust shall hold

property in the Disputed Claim Reserve in trust for the benefit of the Holders of Disputed Claims

that are ultimately determined to be Allowed.  Each Disputed Claim Reserve shall be closed and

extinguished by the Liquidating Trust when all Distributions and other dispositions of Cash of

other property required to be made hereunder will have been made in accordance with the terms

of the Plan.  Upon closure of a Disputed Claim Reserve, all Cash or other property held in that

Disputed Claim Reserve shall revest in and become unrestricted property of the Liquidating

Trust.  All funds or other property that vest or revest in the Liquidating Trust pursuant to this

paragraph shall be used to pay by the Liquidating Trust in accordance with the Plan and the

Liquidating Trust Agreement.

3.      Limitations on Funding Disputed Claim Reserves.  Except as expressly set forth

in the Plan, neither the Debtor nor the Liquidating Trustee shall have any duty to fund any

Disputed Claim Reserve except from the Liquidating Trust Assets.

**O.**      **Rounding.**

Whenever any payment of a fraction of a cent would otherwise be called for, the actual

distribution shall reflect a rounding of such fraction down to the nearest cent.

42

P.      **No Cash Payments of Less Than $50 on Account of Allowed Claims.**

Notwithstanding anything herein to the contrary, except with respect to Administrative, Priority Tax, Secured and Priority Non-Tax Claims, if a Distribution to be made to a Holder of an Allowed Claim on the Initial Distribution Date or any Subsequent Distribution Date would be $50 or less in the aggregate, no such Distribution will be made to that Holder unless a request therefor is made in writing to the Liquidating Trustee. If such request is made, such Cash shall be held for such Holder until the earlier of (i) the next time an interim distribution is made to the Holders of Allowed Claims (unless the distribution would still be less than $50, in which case this Section shall again apply), or (ii) subject to Section Q below, the date on which Final Distributions are made to the Holders of Allowed Claims.

Q.      **Delivery of Distributions and Unclaimed Property.**

1.      Delivery of Distributions. Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the Holders of Allowed Claims shall be made by the Liquidating Trustee at (a) the address of each Claimant as set forth in the Schedules, unless superseded by the address set forth on proof(s) of claim filed by such Claimant, or (b) the last known address of such Claimant if no proof of claim is filed or the Debtor or Liquidating Trustee has been notified in writing of a change of address. If any Distribution is returned as undeliverable, the Liquidating Trustee may, in its discretion, make reasonable efforts to determine the current address of the Holder of the Claim with respect to which the Distribution was made as the Liquidating Trustee deems appropriate, but no Distribution to any such Holder shall be made unless and until the Liquidating Trustee has determined the then-current address of

43

such Holder, at which time the Distribution to such Holder shall be made without interest.

Amounts in respect of any undeliverable Distributions shall be returned to, and held in trust by,

the Liquidating Trustee until the Distributions are claimed or are deemed to be unclaimed

property under Section 347(b) of the Bankruptcy Code, as set forth in Article V, Paragraph K of

the Plan. The Liquidating Trustee shall have the discretion to determine how to make

Distributions in the most efficient and cost-effective manner possible; *provided, however*, that its

discretion may not be exercised in a manner inconsistent with any express requirements of the

Plan or Liquidating Trust Agreement. On or about the time that the Final Distribution is made,

the Liquidating Trustee may make a charitable donation with undistributed funds if, in the

reasonable judgment of the Liquidating Trustee, the cost of calculating and making the Final

Distribution of the remaining funds is excessive in relation to the benefits to the holders of

Claims that would otherwise be entitled to such Distributions, and such charitable donation is

provided to an entity not otherwise related to the Debtor or the Liquidating Trustee.

2.      Unclaimed Property. Except with respect to property not distributed because it is

being held in a Disputed Reserve, Distributions that are not claimed by the later of the expiration

of six (6) months from the Effective Date or (90) days after the date of a Distribution shall be

deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or

revest in the Liquidating Trust, and the Claims with respect to which those Distributions are

made shall be automatically cancelled. After the expiration of that period, the claim of any

Entity to those Distributions shall be discharged and forever barred. Nothing contained in the

Plan shall require the Liquidating Trust to attempt to locate any holder of an Allowed Claim. All

44

funds or other property that vest or revest in the Liquidating Trust pursuant to this Article shall be distributed by the Liquidating Trustee to the other holders of Allowed Claims in accordance with the provisions of the Plan or the Liquidating Trust Agreement.

**R.    Withholding Taxes.**

In connection with making Distributions under this Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  The Liquidating Trustee may withhold the entire Distribution to any Holder of an Allowed Claim until such time as such Holder provides the necessary information to comply with any withholding requirements of any Governmental Unit. Any property so withheld will then be paid by the Liquidating Trustee to the appropriate authority.  If the Holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any Governmental Unit within six months after the date of first notification to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such Holder's Distribution shall be treated in accordance with Article V, Paragraph Q of the Plan.

**S.    United States Trustee Fees.**

All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall be paid by the Debtor on or before the Effective Date.  Thereafter, the Liquidating Trustee shall pay any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) and such fees shall be paid until entry of a Final Decree or an order converting or dismissing the Chapter 11 Case.

DOCS_DE:215514.3

T.    **Books and Records.**

The Debtor shall transfer dominion and control over all of its books and records, in whatever form, manner or media, including, without limitation, the specific provision and presentation, to the Liquidating Trustee of all passcodes for security systems and computers, keys, keycards, and notice letters to landlords, warehousemen or other relevant parties.

## VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    **Rejection of Executory Contracts and Unexpired Leases**

Except with respect to executory contracts or unexpired leases that: (i) were previously assumed or rejected by order of the Bankruptcy Court, and (ii) are the subject of a pending motion to assume or reject, pursuant to Section 365 of the Bankruptcy Code, on the Effective Date, each executory contract and unexpired lease entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code; *provided, however*, that nothing in this Section VI.A shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtor and the Estate, the Debtor's officers, directors and managers and/or the Liquidating Trust.  Nothing in this Article VI shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date.  The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps necessary

46

to retrieve the personal property that is the subject of such executory contracts and leases, and

neither the Debtor nor the Liquidating Trust shall bear any liability for costs associated with such

matters.

**B.**     **Claims Based on Rejection of Executory Contracts or Unexpired Leases**

All proofs of claim with respect to Claims arising from the rejection of executory

contracts or unexpired leases pursuant to Confirmation of the Plan, if any, must be filed with the

Claims Agent within thirty (30) days after the earlier of the Effective Date or an order of the

Bankruptcy Court approving such rejection.  Any Claim arising from the rejection of an

executory contract or unexpired lease pursuant to Confirmation of the Plan that is not filed

within such times will be subject to objection.  All such Claims for which Proofs of Claim are

timely and properly filed and ultimately Allowed will be treated as Unsecured Claims subject to

the provisions of Article 3 hereof.

**C.**     **Insurance Policies**

Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall

not discharge, impair or otherwise modify any obligations of the Insurance Policies.  To the

extent one or more of the Insurance Policies provide potential coverage related to one or more

Causes of Action the Debtor holds or may hold against any Entity, the Debtor shall, to the extent

permissible under each Insurance Policy, assign all of its rights thereunder with respect to such

Causes of Action to the Liquidating Trust.  All net proceeds (including, for the avoidance of

doubt, net of any deductibles or retentions) of Insurance Policies received by the Liquidating

Trust shall be treated as proceeds of such Causes of Action for all purposes under the Plan.  The

47

Debtor shall take no action to or otherwise impair the Insurance Policies.  Nothing in this Plan

shall diminish or impair the enforceability of the Insurance Policies and related agreements that

may cover Claims and Causes of Action against the Debtor or any other Entity.

## VII.

## CONDITIONS PRECEDENT TO CONFIRMATION

## OF THE PLAN AND TO THE EFFECTIVE DATE

**A.**     **Conditions to Confirmation of the Plan.**

Confirmation of this Plan is conditioned upon the satisfaction of each of the following

conditions precedent, any one or more of which may be waived by the Debtor, in consultation

with the Committee: (i) the Bankruptcy Court shall have approved a disclosure statement to this

Plan in form and substance acceptable to the Debtor and (ii) the Debtor shall have determined, in

consultation with the Committee, that there will be  sufficient Cash on the Effective Date to pay

(or with respect to Disputed Claims to reserve for as required pursuant to the Plan) (i) Allowed

Administrative Claims, Non-Tax Priority Claims, and Priority Tax Claims in full (or in such

lesser amount as may be agreed to by the Claimant) and (ii) the Confirmation Order to be

presented to the Bankruptcy Court at the Confirmation Hearing shall be acceptable to the Debtor

in form and substance.

**B.**     **Effect of Failure of Conditions to Confirmation.**

If any one or more of the conditions in Section VII.A is not met, the Debtor may

withdraw this Plan and, if withdrawn, this Plan shall be of no further force or effect.

DOCS_DE:215514.3

C.     **Conditions to Effective Date.**

The occurrence of the Effective Date is conditioned upon the satisfaction of each of the following conditions precedent, any one or more of which may be waived by the Debtor, in consultation with the Committee: (i) a Confirmation Order in form and substance acceptable to the Debtor shall have been entered by the Bankruptcy Court and become a Final Order which is not subject to any stay of effectiveness; (ii) the Liquidating Trust shall have been created pursuant to the terms of the Plan, the Liquidating Trustee shall have been appointed by order of the Bankruptcy Court (which may be the Confirmation Order) and the Liquidating Trust Agreement shall have been executed by the Liquidating Trustee; and (iii) all other actions and documents determined by the Debtor to be necessary to implement the Plan shall have been effected and executed.

D.     **Effective Date.**

Provided the above-referenced conditions to the occurrence of the Effective Date are satisfied, this Plan shall become effective on the Effective Date.

## VIII.

## EFFECTS OF CONFIRMATION

A.     **Binding Effect of Plan.**

The provisions of the confirmed Plan shall bind the Debtor, the Liquidating Trust, the Liquidating Trustee, any Entity acquiring property under the Plan, any Beneficiary, and any Creditor or Equity Interest Holder, whether or not such Creditor or Equity Interest Holder has filed a Proof of Claim or Equity Interest in the Chapter 11 Case, whether or not the Claim of

such Creditor or the Equity Interest of such Equity Interest Holder is impaired under the Plan, and whether or not such Creditor or Equity Interest Holder has accepted or rejected the Plan. All Claims and Debts shall be fixed and adjusted pursuant to this Plan. This Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, or Governmental Unit or parish in which any instrument related to under this Plan or related to any transaction contemplated under this Plan is to be recorded with respect to any taxes of the kind specified in Bankruptcy Code Section 1146(a).

**B.** **Vesting of Property of Debtor in the Liquidating Trust.**

Upon the Effective Date, title to all property of the Estate of the Debtor in the Chapter 11 Case shall vest in the Liquidating Trust and shall be retained by the Liquidating Trust for the purposes contemplated under this Plan pursuant to the Liquidating Trust Agreement. Without limiting the generality of the foregoing, all Causes of Action the Debtor holds or may hold against any Entity, Litigation Recoveries, rights to Liquidation Proceeds, and all resulting Liquidating Trust Assets shall vest in the Liquidating Trust upon the Effective Date and shall no longer constitute property of the Estate.

**C.** **Property Free and Clear.**

Except as otherwise provided in this Plan or the Confirmation Order, all property that shall vest in the Liquidating Trust shall be free and clear of all Claims, Equity Interests, Liens, interests, charges, or other encumbrances of Creditors or Interest Holders, other than as set forth herein, in the Liquidating Trust Agreement, and in relevant documents, agreements, and instruments contained in the Plan Supplement. Following the Effective Date, the Liquidating

50

Trustee may transfer and dispose of any such property free of any restrictions imposed by the

Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court

or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation

Order.

**D.      Exculpation.**

**The Debtor, the Committee and each of their respective officers, directors,**

**shareholders, members, managers, employees, agents, advisors, accountants, attorneys, and**

**representatives and their respective property (collectively, the "Exculpated Parties"), will**

**neither have nor incur any liability to any entity for any action in good faith taken or**

**omitted to be taken after the Petition Date in connection with or related to the Chapter 11**

**Case,** the sale of the Debtor's assets **or the formulation, preparation, dissemination,**

**implementation, Confirmation, or Consummation of the Plan, the Disclosure Statement, or**

**any agreement created or entered into in connection with the Plan;** *provided, however,* **that**

**this limitation will not affect or modify the obligations created under this Plan, or the rights**

**of any Holder of an Allowed Claim to enforce its rights under the Plan, and shall not**

**release any action (or inaction) constituting willful misconduct, fraud, or gross negligence**

**(in each case subject to determination of such by final order of a court of competent**

**jurisdiction);** *provided* **that any Exculpated Party shall be entitled to reasonably rely upon**

**the advice of counsel with respect to its duties and responsibilities (if any) under this Plan,**

**and such reasonable reliance shall form an absolute defense to any such claim, Cause of**

**Action, or liability.  Without limiting the generality of the foregoing, each Exculpated Party**

51

DOCS_DE:215514.3

shall be entitled to and granted the protections of Section 1125(e) of the Bankruptcy Code.

Except as specifically set forth in Section VIII.E below, no provision of this Plan or the

Disclosure Statement shall be deemed to act to or release any claims, Causes of Action,

Litigation claims or rights, or liabilities that the Liquidating Trust or the Estate may have

against any Entity or person for any act, omission, or failure to act that occurred prior to

the Petition Date, nor shall any provision of this Plan be deemed to act to release any

Causes of Action, Litigation, or Litigation claims.

E.      **Releases.**

1.      **Debtor Release.**

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise

specifically provided in the Plan, for good and valuable consideration, on and after and

subject to the occurrence of the Effective Date, the Debtor and its estate shall release each

Released Party, and each Released Party is deemed released by the Debtor and the estate

from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies,

and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf

of any of the Debtor or its estate, as applicable, whether known or unknown, foreseen or

unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured,

determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or

to become due, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor

or the estate would have been legally entitled to assert in its own right, or on behalf of the

Holder of any Claim or Interest or other entity, based on or relating to, or in any manner

52

arising from, in whole or in part, the Debtor, the Debtor's liquidation, the Chapter 11 Case,

the purchase, sale, transfer of any security, asset, right, or interest of the Debtor, the

subject matter of, or the transactions or events giving rise to, any Claim or Interest that is

treated in the Plan, the business or contractual arrangements between any Debtor and any

Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11

Case, the negotiation, formulation, or preparation of the Plan or related agreements,

instruments, or other documents, any other act or omission, transaction, agreement, event,

or other occurrence taking place on and before the Petition Date, other than claims or

liabilities arising out of or relating to any act or omission of a Released Party that

constitutes fraud, willful misconduct, or gross negligence; provided, that the foregoing

Debtor Release shall not operate to waive or release any obligations of any party under the

Plan or any other document, instrument, or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval,

pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference

each of the related provisions and definitions contained herein, and further, shall constitute

the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good

and valuable consideration provided by the Released Parties; (b) a good faith settlement

and compromise of the Claims released by the Debtor Release; (c) in the best interests of

the Debtor and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e)

given and made after due notice and opportunity for hearing; and (f) a bar to any of the

Debtor or its estate asserting any Claim or Cause of Action released pursuant to the Debtor

**Release.**

2.      **Third Party Release.**

On and after and subject to the occurrence of the Effective Date, except as otherwise

provided in the Plan, each Claimant (collectively, the "<u>Releasing Parties</u>") who affirmatively

votes to accept the Plan and who does not elect to "opt-out" by marking the appropriate box on

such Releasing Party's respective Ballot, for themselves and their respective successors, assigns,

transferees, and such Claimants' officers and directors, agents, members, financial and other

advisors, attorneys, employees, partners, affiliates, and representatives (in each case in their

capacity as such), shall release (the "<u>Third Party Release</u>") each Released Party, and each of the

Debtor, its estate, and the Released Parties shall be deemed released from any and all claims,

interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities

whatsoever, including any derivative claims asserted or assertable on behalf of any of the Debtor

or its estate, as applicable, whether known or unknown, foreseen or unforeseen, asserted or

unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed

or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter

arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert

(whether individually or collectively), based on or relating to, or in any manner arising from, in

whole or in part, the Debtor, the Debtor's liquidation, the Chapter 11 Case, the purchase, sale,

transfer of any security, asset, right, or interest of the Debtor, the subject matter of, or the

transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business

or contractual arrangements between any Debtor and any Released Party, the restructuring of

54

Claims and Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Petition Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence. Notwithstanding anything to the contrary in the foregoing, the Third Party Release shall not release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan.

**F.    Injunction.**

**In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtor, the Liquidating Trust, or the Estate that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtor, the Estate, the Liquidating Trust, or any of the Liquidating Trust Assets, the Debtor, or the Estate with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtor, the Estate, the Liquidating Trust, or any of the Liquidating Trust Assets, the Debtor, or the Estate with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing,**

**directly or indirectly, any Lien or encumbrance of any kind against the Debtor, the Estate,**

**or the Liquidating Trust, or any of the Liquidating Trust Assets, the Debtor, or the Estate**

**with respect to any such Claim or Interest; and (d) any act, in any manner, in any place**

**whatsoever, that does not conform to or comply with the provisions of the Plan with respect**

**to such Claim or Interest.  Nothing contained in this Section shall prohibit the Holder of a**

**timely filed Proof of Claim from litigating its right to seek to have such Claim declared an**

**Allowed Claim and paid in accordance with the distribution provisions of this Plan, or**

**enjoin or prohibit the interpretation or enforcement by the Claimant of any of the**

**obligations of the Debtor or the Liquidating Trust under this Plan.**

G.      <u>Post-Confirmation Liability of Liquidating Trustee.</u>

The Liquidating Trustee, together with his or her consultants, agents, advisors, attorneys,

accountants, financial advisors, other representatives and the professionals engaged by the

foregoing (collectively, the "<u>Indemnified Parties</u>") shall not be liable for any and all liabilities,

losses, damages, claims, causes of action, costs and expenses, including but not limited to

attorneys' fees arising out of or due to their actions or omissions, or consequences of such

actions or omissions, to the Holders of Claims or Equity Interests for any action or inaction taken

in good faith in connection with the performance or discharge of their duties under this Plan,

except the Indemnified Parties will be liable for actions or inactions that are grossly negligent,

fraudulent, or which constitute willful misconduct (in each case, liability shall be subject to

determination by final order of a court of competent jurisdiction).  However, any act or omission

taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be

DOCS_DE:215514.3

conclusively deemed not to constitute gross negligence, fraud or willful misconduct.  In addition, the Liquidating Trust and the Estate shall, to the fullest extent permitted by the laws of the State of Delaware, indemnify and hold harmless the Indemnified Parties from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust and the Estate or the implementation or administration of the Plan if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the Liquidating Trust and the Estate.  To the extent the Liquidating Trust indemnifies and holds harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidating Trustee in monitoring and participating in the defense of such claims giving rise to the right of indemnification shall be paid as Liquidating Trust Expenses.  All rights of the Persons exculpated and indemnified pursuant hereto shall survive confirmation of the Plan.

## H.    Preservation of Rights of Action.

  1.    Vesting of Causes of Action.

    (a)    Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtor holds or may hold against any Entity shall vest upon the Effective Date in the Liquidating Trust.

    (b)    Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute,

abandon, settle, or compromise any Causes of Action the Debtor holds or may hold against any

Entity, in accordance with the terms of the Liquidating Trust Agreement and without further

order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an

adversary proceeding filed in the Chapter 11 Case.

(c)     Causes of Action and recoveries therefrom shall remain the sole property

of the Liquidating Trust, for the ratable benefit of the Beneficiaries of the Liquidating Trust, and

holders of Claims shall have no direct right or interest in to any such Causes of Action or

recovery.

2.     Preservation of All Causes of Action Not Expressly Settled or Released.

(a)     Unless a Cause of Action against a holder of a Claim or other Entity is

expressly waived, relinquished, released, compromised, or settled in the Plan an or any Final

Order (including the Confirmation Order), the Debtor and the Liquidating Trustee expressly

reserve such retained Cause of Action for later adjudication by the Debtor or the Liquidating

Trustee (including, without limitation, Causes of Action not specifically identified or described

in the Plan Supplement or elsewhere, or of which the Debtor may be presently unaware, or which

may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this

time, or facts or circumstances that may change or be different from those the Debtor now

believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the

doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel

(judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon or after the

entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or

58

Confirmation Order, except where such Causes of Action have been released or otherwise resolved by a Final Order (including the Confirmation Order).  In addition, the Debtor and Liquidating Trustee expressly reserve the right to pursue or adopt claims alleged in any lawsuit in which the Debtor is a defendant or an interested party against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

(b)    Subject to the immediately preceding paragraph, any Entity to which the Debtor has incurred an obligation (whether on account of services, the purchase or sale of goods, or otherwise), or that has received services from the Debtor or a transfer of money or property of the Debtor, or that has received services from the Debtor or a transfer or money or property of the Debtor, or that has transacted business with the Debtor, or that has leased equipment or property from the Debtor, should assume and is hereby advised that any such obligation, transfer, or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether (i) such Entity has filed a proof of claim against the Debtor in the Chapter 11 Case; (ii) the Debtor or Liquidating Trustee has objected to any such Entity's proof of claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtor or Liquidating Trustee has objected to any such Entity's scheduled Claim; (v) any such Entity's scheduled Claim has been identified by the Debtor or Liquidating Trustee as disputed, contingent, or unliquidated; or (vi) the Debtor has identified any potential claim or Cause of Action against such Entity herein or in the Disclosure Statement..

**I.**     <u>**No Discharge.**</u>

Nothing contained in this Plan shall be deemed to constitute a discharge of the Debtor under Bankruptcy Code section 1141(d)(3).

**IX.**

<u>**RETENTION OF JURISDICTION**</u>

From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

1.     To hear and determine any and all objections to the allowance of a Claim, proceedings to estimate a Claim for any purpose, actions to equitably subordinate a Claim, proceedings seeking approval of any necessary claims reconciliation protocols, or any controversy as to the classification of a Claim in a particular Class under the Plan;

2.     To administer the Plan, the Liquidating Trust, the Trust Assets and the Trust Proceeds;

3.     To estimate or liquidate any Disputed Claims;

4.     To hear and determine any and all adversary proceedings, contested matters or applications pending on the Effective Date or otherwise relating to, arising from, or in connection with the Litigation; *provided, however*, that the Liquidating Trustee shall reserve the right to commence actions in all appropriate jurisdictions;

5.     To hear and determine any and all motions and/or objections to fix, estimate, allow and/or disallow any Claims arising therefrom;

60

6.      To hear and determine any and all applications by Professionals for an award of Professional Fees;

7.      To enable the Liquidating Trustee to commence and prosecute any Litigation which may be brought after the Effective Date;

8.      To interpret and/or enforce the provisions of the Plan and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan or any agreement, document, or instrument contemplated by the Plan;

9.      To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified, or vacated;

10.      To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

11.      To enter such orders as may be necessary or appropriate in furtherance of Confirmation and the successful implementation of the Plan and to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code;

12.      To enter any orders as required by Rule 23 of the Federal Rules of Civil Procedure, to the extent made applicable to any adversary proceeding pursuant or contested matter pursuant to Bankruptcy Rules 7023 and 9014(c), as applicable; and

13.      To close the Chapter 11 Case when administration of the Liquidating

61

Trust and the Chapter 11 Case have been completed.

## X.

## **MISCELLANEOUS**

**A.    Revocation of Plan.**

The Debtor reserves the right to revoke and withdraw the Plan at any time on or before the Confirmation Date.  If the Debtor revokes or withdraws the Plan pursuant to this Section, or if Confirmation or the Effective Date does not occur, then the Plan shall be deemed null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other entity or to prejudice in any manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor.

**B.    Severability of Plan Provisions.**

In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and

shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**C.**    **Exhibits.**

All exhibits attached to this Plan, the Plan Supplement, or the Disclosure Statement are, by this reference, hereby incorporated into the Plan.  The final version of all Exhibits to the Plan, the Plan Supplement, and the Disclosure Statement will be substantially in the forms attached hereto or thereto.  The Debtor reserves the right to make non-substantive changes and corrections to such Exhibits in advance of the Confirmation Hearing.  If any Exhibits are changed or corrected, the replacement Exhibits will be filed with the Bankruptcy Court prior to the commencement of the Confirmation Hearing.

**D.**    **Notices.**

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by nationally recognized overnight or next-day courier service, first-class mail, electronic mail, or via facsimile with electronic confirmation of receipt as follows:

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tel. 302-652-4100, Fax 302-652-4400
Attn:  Laura Davis Jones
ljones@pszjlaw.com

[LIQUIDATING TRUSTEE UPON IDENTIFICATION IN ACCORDANCE WITH TERMS OF PLAN]

E.      **Reservation of Rights.**

Neither the filing of the Plan nor any statement or provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall: (a) be or be deemed to be an admission against interest and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in or to any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved.  In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or without the Chapter 11 Case involving the Debtor, except with respect to Confirmation of the Plan.

F.      **Defects, Omissions and Amendments.**

The Debtor may, with the approval of the Bankruptcy Court and without notice to all Holders of Claims or Interests, insofar as it does not materially and adversely affect Holders of Claims, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable to expedite the execution of the Plan.  The Plan may be altered or amended before or after Confirmation as provided in Section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of Holders of Claims, so long as the Plan, as modified, complies with Sections 1122 and 1123 of the Bankruptcy Code and the Debtor has complied with Section 1125 of the Bankruptcy Code.  The Plan may be altered or amended before or after the

64

Confirmation Date but, prior to substantial Consummation, in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of Claims, so long as the Plan, as modified, complies with Bankruptcy Code Sections 1122 and 1123, the Debtor has complied with Bankruptcy Code Section 1125 and, after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under Bankruptcy Code Section 1129.

**G.**    **Filing of Additional Documents.**

The Debtor shall file with the Bankruptcy Court such agreements, instruments, pleadings, orders, papers, or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**H.**    **Successors and Assigns.**

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such Entity.

**I.**    **Setoffs and Recoupments.**

The Liquidating Trust may, but shall not be required to, set off against or recoup from the payments to be made pursuant to this Plan in respect of a Claim, any claim of any nature whatsoever that the Debtor, the Liquidating Trust, or the Estate, as applicable, may have against the Holder of such Claim, but neither the failure to do so or the allowance of any Claim hereunder shall constitute a waiver or release of any such claim by the Debtor, the Liquidating Trust, or the Estate, against such Holder.

DOCS_DE:215514.3

J.    **Tax Exemption**

Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security under this Plan, or the execution, delivery, or recording of an instrument of transfer pursuant to, in implementation of, or as contemplated by this Plan, including, without limitation, any transfers to or by the Debtor, if on the Effective Date, and the Liquidating Trustee, if after the Effective Date, of the Debtor's property in implementation of or as contemplated by this Plan (including, without limitation, any subsequent transfer of property by the Liquidating Trust) shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

K.    **Securities Exemption**

To the extent the Liquidating Trust Interests are deemed or asserted to constitue securities, the Liquidating Trust Interests and the issuance and distribution thereof shall be exempt from Section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation, Section 1145 of the Bankruptcy Code.

DOCS_DE:215514.3

**L.**      **Implementation.**

Upon Confirmation, the Debtor shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in the Plan.

**M.**      **Record Date.**

To the extent a "Record Date" is required for implementation of this Plan, the record date shall be the voting record date established by the Bankruptcy Court in the order approving the Disclosure Statement or such other date as the Bankruptcy Court may set.

**N.**      **Certain Actions.**

1.      By reason of entry of the Confirmation Order, prior to, on, or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of directors or stockholders of the Debtor under the Plan, including, without limitation, (i) the distribution of Cash pursuant to the Plan, (ii) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (iii) the adoption, execution, and implementation of other matters provided for under the Plan involving the company or organizational structure of the Debtor, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to the applicable general corporation law of the state in which the Debtor is chartered, organized, or incorporated, without any requirement of further action by the directors and stockholders of the Debtor, irrespective of whether the Confirmation Order specifically authorizes any such action.

67

2.      Effective upon the Effective Date, the Debtor's formation documents shall each be deemed amended to prohibit the issuance by the Debtor of nonvoting securities to the extent required under Section 1123(a)(6) of the Bankruptcy Code.

3.      On or as soon as practicable following the Effective Date, the Liquidating Trustee shall be authorized to cancel, annul, and extinguish all Equity Interests.

**O.      Substantial Consummation.**

On the Effective Date, the Plan shall be deemed substantially consummated under Bankruptcy Code Sections 1101 and 1127(b).

**P.      Waiver of Fourteen-Day Stay.**

The Debtor requests as part of the Confirmation Order a waiver from the Bankruptcy Court of the 14-day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the 14-day stay of Bankruptcy Rule 6004(g).

Dated:  October 19, 2017                    Respectfully submitted,

                                            AEI WINDDOWN, INC.
                                            By: Suzanne Roski, its Chief Restructuring
                                            Officer

68